**RED RIVER PIPELINE, A General Partnership, Appellant,**

v.

**Clifford Gaylon AMONETT, et al., Appellees.**

No. 07-84-0067-CV.

Court of Appeals of Texas, Amarillo.

Aug. 21, 1985.

Jerry M. Kolander, Jr., McCleskey Harriger Brazill & Graf, Lubbock, for appellant.

Carroll Cobb, Lubbock, John L. Barnhill, Jung & Marley, Crosbyton, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Appellant Red River Pipeline, a general partnership and a common carrier in the pipeline business of transporting oil and gas, initiated an action to condemn an easement and right-of-way for a pipeline through the farm land of appellees, the Amonetts.[1] Both Red River and the Amonetts objected to the amount of damages awarded to the Amonetts by the special commissioners, and the issue of damages was tried before a jury. Red River appeals from the judgment awarding the Amonetts $56,898.44 in damages. Concluding that reversal is not warranted by Red River's points of error, we affirm.

In the construction of its buried 24-inch natural gas pipeline, Red River condemned a permanent easement, fifty feet wide and 2583.9 feet long, and a temporary working easement, ten feet on each side of the permanent easement, extending diagonally across from the south boundary to the east boundary of the Amonetts' 319-acre irrigated farm. The permanent easement contained 2.97 acres of land, and the temporary working easement embraced an additional 1.19 acres.

By its answers to the special issues submitted, the jury found that the reasonable market value of the Amonett property, including the easements, before the taking of the easements was $1,400 per acre; that the reasonable market value of the 1.19-acre temporary working easement after the taking was $500 per acre; that the reasonable market value of the 2.97-acre permanent easement after the taking was $200

per acre; and that the reasonable market value of the 314.84-acre remainder after the taking was $1,234 per acre. Judgment rendered on the verdict decreed that the Amonetts recover $56,898.44 from Red River.

With the first five of its eight points of error, Red River contends the trial court erred (1) in overruling its challenge for cause to five jurors, (2) in admitting photographs taken during construction of the pipeline, and (3) in admitting testimony concerning aerial or pilot landmark maps. With its eighth point, Red River also contends that the award for the diminished market value of the 314.84-acre remainder tract is so manifestly excessive as to be the result of improper motive or in disregard of the evidence by the jury.[2]

Five of thirteen jury panelists whom Red River unsuccessfully challenged for cause served on the jury. The challenges, premised on the statutory disqualification for bias or prejudice,[3] were levied when thirteen of the first twenty-five members of the jury panel answered affirmatively when Red River's counsel asked the following, or similarly worded, questions:

Q [D]o you feel like or believe that the construction of the pipeline automatically damages the property it's going across?

\* \* \* \* \* \*

Q Do you think it's going to take evidence from this witness stand to con-

---

1. Appellees are Clifford Gaylon Amonett, Wanda Fay Campbell, Marjorie Reynolds, Billie Jo Hughes, Jessie M. Amonett, Roy Amonett, Dorothy Land Strickland, Eunice Amonett, and Eldon Amonett, who will be referred to as the Amonetts.

2. Red River originally contended by its sixth and seventh points of error that the jury findings of the before- and after-taking market values for the two easements and the remainder were unsupported by the evidence or against the great weight and preponderance of the evidence. However, Red River, candidly conceding on oral submission of the appeal that the jury's findings are within the limits of the testimony before it, and that we may not substitute

our opinion of values for those the jury found were the most reasonable under the evidence, *Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 246 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), has waived our consideration of those points of error. Consequently, points six and seven are summarily overruled.

3. Our law provides that:
 The following persons shall be disqualified to serve as jurors in any particular case:
 \* \* \* \* \* \*
 4. Any person who has a bias or prejudice in favor of or against either of the parties. Tex.Rev.Civ.Stat.Ann. art. 2134 (Vernon 1964).

vince you that the land has not been damaged?

The court deferred a ruling until counsel for the Amonetts had the opportunity to address the panel members who were challenged for cause. Counsel first addressed panelist Joe Lowrie, who was not selected as a juror, asking these questions and receiving these answers:

Q Now, may I inquire of you, first, Mr. Lowrie: Do you believe that if I take some property from you, that it has some value?

A Yes, sir.

Q And would you say that's fundamental?

A Sure.

Q Now, when you were asked damages, were you computing that there may be damages to the remainder and there may not be?

A Well, if this land is put back to where the water will run, it's absolutely level, the topsoil is put back, then it's okay, no damages, but if it's not, he will have trouble with that from now on.

Q Is your mind closed so that it would take evidence to change your thinking so far as your impartiality is concerned?

A If it's done properly, then it would be okay. If they can convince me that it's put back like it should be, then okay.

Q You haven't made your mind up yet, have you?

A No.

Q It's not going to take evidence to change your mind one way or the other, because you haven't made it up yet, have you?

A That's right.

The next three panelists, who were not chosen as jurors, were then asked if they differed from panelist Joe Lowrie's position, and each gave negative responses. When panelist Cody Marlar, who also did not serve on the jury, was asked the same question, he responded with a question and statement about the temporary working easement. After counsel for the Amonetts stated he did not think that applied to the question, the following exchange occurred between counsel and panelist Marlar.

Q I think the question is whether or not your mind is closed that there is damage to the remainder caused by the pipeline until you have heard all the evidence.

A Yes, I believe it is.

Q You think it is closed?

A Yes.

Q All right, sir. Is that based upon the premise that you believe there is a taking and they ought to pay for that taking?

A Yes, sir.

Q But you don't know whether it's damaged the far acre in the other corner or not yet, do you?

A No.

Q And you are going to listen to evidence on that, aren't you?

A That's right.

Q Other than paying for what they have taken, a fair market price, you haven't made up your mind on even what the fair market price is yet, have you?

A No.

Q So your mind is not closed to anything, is it, Mr. Marlar?

A Well, I suppose not, no, sir.

Then, of the eight remaining panel members who were challenged for cause, two members not chosen on the jury, and three members—Wood, Reyna and Ellis—who served on the jury, stated that they did not differ from what Joe Lowrie and Cody Marlar said. One member of the panel who did not serve on the jury, and two—Morris and Marc Lowrie—who did serve, answered that they did not have any differences with Joe Lowrie and Cody Marlar, and that their minds were not closed to the evidence.

 After the court offered to excuse any of the panel members challenged for cause if counsel for the Amonetts would agree to the excuse, and counsel declined to agree that the challenge was good as to any person, the court overruled Red Riv-

er's challenges for cause.[4] Five of the thirteen challenged panelists—Wood, Reyna, Ellis, Morris and Marc Lowrie—appeared unstruck from the jury list and served on the jury. Red River neither sought additional preemptory strikes nor voiced an objection to the trial court that these challenged members were selected to serve on the jury.

Initially, Red River contends that the court erred as a matter of law in overruling its challenges for cause to the five jurors who served. In considering the contention, we recognize that the parties dispute the effect of the questions by counsel and responses by the panel members shown in the voir dire examination just noticed.

Red River asserts that the questions elicited responses establishing that the challenged members believed the construction of the pipeline would automatically damage the Amonetts' property and each would require evidence to convince them otherwise. These frames of mind, Red River submits, establish under *State v. Burke,* 434 S.W.2d 240, 243 (Tex.Civ.App.—Waco 1968, no writ), that the five jurors had prejudged the cause as to damages and wrongfully shifted to Red River the burden to prove otherwise, which, by the authority of *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963), disqualified the five as a matter of law from serving on the jury.

To the contrary, the Amonetts respond, counsels' questions and the members' answers pertain to the easement tract and not to the remainder, or at least make the subject matter ambiguous. This being so, they argue, the panel members could equate the taking to damages because the condemnor, Red River, must pay some monetary value for the taking, else the taking is not constitutional. *Long v. City of Austin,* 265 S.W.2d 632, 637 (Tex.Civ. App.—Austin 1954, writ ref'd n.r.e.). Therefore, they say, since the court further admonished the panel members to decide

the case based on the evidence, and no member questioned the admonishment, the court's factual determination that the members were not disqualified by bias or prejudice should be reviewed in the light most favorable to upholding that ruling. *Compton v. Henrie, supra.*

It readily is understandable that the voir dire examination to the point where panelist Cody Marlar was questioned could reasonably be taken as pertaining to the easement tract and not to the remainder. Yet, even then, the answers showed the panel members were disposed to require Red River to show, as Joe Lowrie expressed it, no damages. Moreover, when Marlar was questioned, he was asked specifically whether his mind was closed that there was *damage to the remainder* caused by the pipeline, and his affirmative answer was definite. The following inquiries and his answers were directed only to the issue of proof of the amount of damages, and not to the reality that his affirmative answer to the damage-to-the-remainder question was a prejudgment that the pipeline caused damage to the remainder. The five challenged jurors affirmed that they did not differ from what Joe Lowrie and Cody Marlar said.

 The taking of a portion of a tract of land for an easement does not as a matter of law diminish the market value, *i.e.,* damage, the remainder. *DeSanders v. Texoma Pipe Line Co.,* 538 S.W.2d 663, 665–66 (Tex.Civ.App.—Texarkana 1976, no writ), and authorities cited there. Thus, the prejudgment of damage to the remainder with, or even aside from, the misplacement of the burden of proof that was adopted by the five challenged jurors established their prejudice as a matter of law which statutorily disqualified them from serving on the jury, thereby precluding any exercise of discretion in the matter by the court, *Compton v. Henrie, supra;* and this

4. Of course, it is elementary that a challenge for cause on the statutory ground of bias or prejudice quoted in marginal note 3 is not determinable by agreement with counsel; instead, it is a matter for resolution by the court alone, and if

the statutory disqualification of a panelist is established, it becomes solely a matter of law. *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex. 1963).

disqualification obtains in spite of the jurors' affirmations that they were to decide the cause based on the evidence. *Carpenter v. Wyatt Construction Company*, 501 S.W.2d 748, 750 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *Texas Electric Service Company v. Boyce*, 486 S.W.2d 111, 112–13 (Tex.Civ.App.—El Paso 1972, no writ).

■ Given the legal disqualification of each of the five jurors, the trial court erred in overruling the challenges for cause to them. But that does not conclude the matter, for the court's error does not necessarily constitute harmful error warranting a reversal.

■ Although the court obviously was aware that the five challenged jurors were objectionable to Red River, the court's refusal to excuse the disqualified jurors constituted harmful error only if Red River used all of its preemptory challenges and then informed the court that it was prevented from striking the five objectionable jurors because it had no additional preemptory challenges. *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888, 889–90 (Tex.1985). Accepting Red River's representation, which is not validated by the record before us, that it used its six preemptory challenges to strike six of the thirteen challenged panel members, the record does not reveal that Red River either sought additional preemptory challenges or informed the court that it was forced to accept the five objectionable jurors because of the lack of preemptory challenges. It follows that Red River failed to preserve, and thereby waived, the error committed by the trial court, *id.*, since the record brought forward does not reveal preserved error requiring a reversal. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968). The first point of error is overruled.

By its second and fourth points, Red River contends the court erred in admitting exhibits 15 through 25, photographs taken during construction of the pipeline. The premise for the contention is that the photographs are irrelevant to the issue of market value and, resultantly, are prejudicial and inflammatory.

■ At the outset, we notice that it is proper to admit evidence upon all such matters which reasonably may affect the value and depreciation in value of the land, including such matters as conditions before and after the taking. *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 200, *reh'g denied*, 126 Tex. 604, 89 S.W.2d 979 (1936). In this regard, one of the appellee-condemnees, Gaylon Amonett, testified to the procedure and the width of the easements, both permanent and temporary, used by Red River in constructing the pipeline, and stated that because of the wet conditions, the soil was packed. Another of the appellee-condemnees, Clifford Amonett, gave testimony that in constructing the pipeline, Red River exceeded the bounds of the easement and improperly replaced the soil in filling the ditch dug for the pipeline, leaving a mound and packed soil which he was not able to rectify, causing irrigation and rain water to puddle next to and flow down the easement rather than across it into the adjacent field, and resulting in soil erosion.

Red River does not complain of the testimony itself; but it did object to the admission of exhibits 15 through 25, identified by Clifford Amonett during his testimony as pictures he "had taken during the time of the pipeline, when it was being cut and being made, and the washing that was caused before and after the beginning of the pipeline." The photographs were admitted in evidence over the objections on which Red River now bases its points of error.

■ The trial judge is accorded considerable discretion in ruling on the admission or exclusion of photographic evidence. 2 R. Ray, *Texas Law of Evidence Civil and Criminal* § 1466 (Texas Practice 3d ed. 1980). And generally, photographs are admissible for the purpose of explaining and applying the evidence to aid the factfinder in understanding the case. *Bell v. Buddies Super-Market*, 516 S.W.2d 447,

450 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.).

■■■ The photographic exhibits 15 through 25, to which no objections are made that they do not correctly represent the scenes depicted, merely are graphic portrayals of the unobjected to testimony that was admissible, not as the measure of damages, but as testimonial facts to enable the jury to arrive at the correct market values. *Southwestern Public Service Co. v. Vanderburg*, 581 S.W.2d 239, 245 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). We, therefore, cannot say that the court abused its discretion in admitting the photographs. *Accord Zeek v. Gaddy*, 287 S.W.2d 490, 492 (Tex.Civ.App.—Austin 1956, writ ref'd n.r. e.); *Fort Worth & D.C. Ry. Co. v. Kiel*, 195 S.W.2d 405, 411 (Tex.Civ.App.—Fort Worth 1946, writ ref'd n.r.e.). The second and fourth points of error are overruled.

During the trial, Red River's representative, Jim Prewitt, gave testimony that he had seen aerial photographs visibly showing a pipeline, but he did not have any idea how long it remained visible after it was installed. Thereafter, the Amonetts presented the testimony of Arvil L. Campbell, the husband of appellee Wanda Fay Campbell. Campbell, a farmer and a pilot, testified that United States Department of Commerce VFR, *i.e.*, visual flight rules, charts are marked with highways, railroads, and pipelines as flying aids. He indicated and marked on a chart published in 1983 a pipeline from Shallowater to Childress, saying the pipeline is readily visible from the air in the summer when a crop is growing. At that point, Red River objected "to this line of questioning" on the ground that it had no relevancy to the issues. The court overruled the objection.

Then, Campbell produced another chart published in 1969 showing the same pipeline. Neither chart showed the pipeline constructed by Red River. The Amonetts offered both charts in evidence, but they were not received when the court sustained Red River's objection that they had no rele-

vancy and materiality to the matters being tried.

With its third and fifth points of error, Red River contends the court reversibly erred in admitting the testimony regarding the aerial maps because it was not relevant and it was prejudicial and inflammatory. We do not agree.

■■■ The objection to the admission of Campbell's testimony was not properly preserved and presented because similar evidence given by Prewitt was admitted without objection, *Walker v. Great Atlantic & Pacific Tea Co.*, 131 Tex. 57, 112 S.W.2d 170, 172 (1938); and in any event, if the admission of the testimony was error, it was harmless error due to the receipt of the similar evidence without objection. *Thompson v. State*, 165 S.W.2d 131, 133–34 (Tex.Civ.App.—Amarillo 1942, no writ). Beyond that, since Red River did not object in the trial court that the testimony was prejudicial and inflammatory, it may not enlarge its trial court objection to raise this contention on appeal. *Motor 9, Inc. v. World Tire Corp.*, 651 S.W.2d 296, 301 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). Points five and six are overruled.

By its eighth and last point of error, Red River presents its contention that the jury's award for the diminished market value of the 314.84-acre remainder is manifestly excessive and clearly shows, in the light of the record, that the award was a result of passion, prejudice or sympathy for the Amonetts or other improper motive. In this connection, the jury's finding of $1,400 per acre as the reasonable market value of the remainder before the taking is well within the range of the $1,200 to $1,600 per acre value placed on the property by the witnesses; the jury's finding of $1,234 per acre as the reasonable market value of the remainder after the taking is more than the maximum $1,188.08 per acre value placed on the property by any witness; and the resulting diminished value of $266 per acre is well within the $11.92 to $450 per acre range of diminished values derived from the testimony of the witnesses.

Implicit in Red River's argument is the suggestion that the opinions of its expert witness, whose opinions produced the $11.92 per acre diminished value, were entitled to more weight than those of the Amonetts' three witnesses. But the conflicting testimony of opinion values merely raised the question of the extent of the reduction in market value for the jury's determination, to be made after weighing the opinion testimony and considering it in the light of their own general knowledge and experience on the subject. *Southwestern Public Service Co. v. Vanderburg, supra,* at 244–45. Indeed, it appears the jury did just that in fixing the per acre value of the remainder before the taking at a lesser amount than any testified to by the Amonetts' witnesses, albeit higher than the amount testified to by Red River's witness, and in favoring Red River by finding an after-taking value in excess of that testified to by any witness. Since the jury, in arriving at the remainder's value after the taking, was only restricted by the lowest after-taking value placed on the property, *Roberts v. State,* 350 S.W.2d 388, 391 (Tex. Civ.App.—Dallas 1961, no writ); *Maddox v. Gulf, Colorado & Santa Fe Railway Co.,* 293 S.W.2d 499, 506–07 (Tex.Civ.App.— Fort Worth 1956, writ ref'd n.r.e.), the jury's award for the diminished market value of the remainder cannot be said to be manifestly excessive. *Southwestern Public Service Co. v. Vanderburg, supra,* at 244–46.

This determination remains even though Red River, submitting that *Union City Transfer v. Adams,* 248 S.W.2d 256 (Tex. Civ.App.—Fort Worth 1952, writ ref'd n.r. e.), and *G.I. Surplus v. Renfro,* 246 S.W.2d 293 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.), prescribe a review of the entire record to ascertain if it reflects anything to indicate the jury was influenced by passion, prejudice or other improper motive, asserts that this record shows a verdict resulting from prejudiced and biased jurors being seated and the introduction of prejudicial evidence. However, as we previously held, Red River waived the court's error in seating disqualified jurors, and there was no reversible error in admitting the evidence claimed on appeal to be prejudicial and inflammatory. The eighth point is overruled.

The judgment is affirmed.