Michael Lewis SULLEMON, Appellant,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.

No. 05–86–00706–CV.

Court of Appeals of Texas, Dallas.

April 28, 1987.

S. Lynn Blakeman, Dallas, for appellant.
Hollye C. Fisk, Dallas, for appellee.

Before STEPHENS, STEWART and THOMAS, JJ.

STEWART, Justice.

Michael Sullemon brought a workers' compensation case against United States Fidelity & Guaranty Company (Fidelity) for benefits from injuries sustained by Sullemon while in the course and scope of his employment. The jury found that Sullemon was injured in the course of his employment and that such injury was a producing cause of total temporary incapacity and not, as Sullemon alleged, total and permanent incapacity. Judgment was rendered accordingly. Sullemon brings one point of error wherein he argues that the trial court erred in refusing to remove for bias or prejudice venirepersons R.T. Harrington, Linda J. Cannon, and Rendia T. Dixon, thereby depriving Sullemon of his proper number of peremptory challenges. We overrule Sullemon's point of error and affirm.

■ Sullemon argued at trial that his injuries resulted in total and permanent incapacity. However, at the time of trial

and for approximately one year before trial, he worked as a cashier and bartender in his uncle's business. Sullemon proceeded upon the premise that despite his acquisition of employment following his injury, he nevertheless sustained permanent "total incapacity" within the meaning of the workers' compensation law. An injured worker may be so incapacitated despite continuation of employment. *See, e.g., Texas Employers' Insurance Association v. Wilson*, 563 S.W.2d 685, 688 (Tex.Civ.App.—Fort Worth 1978, no writ); *Texas General Indemnity Co. v. Cox*, 544 S.W.2d 766, 768 (Tex.Civ.App.—Dallas 1976, no writ).

At the outset of the voir dire examination of the jury panel, Sullemon's counsel discussed the accepted definition of "total incapacity." Counsel explained that it "does not imply absolute inability to perform any kind of labor" but "means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he or she cannot get and keep employment."

Sullemon's counsel then asked the prospective jurors whether any one of them felt he or she probably should not serve on the jury, either because of an inability to accept, follow, or apply the definition of "total incapacity" or because of anything else heard during the course of the voir dire examination. Having previously indicated reluctance to find a person totally incapacitated while that person still performed some kind of labor, venireperson Tom Workman acknowledged that he probably should not serve on the jury. Venirepersons R.T. Harrington, Linda T. Cannon, and Rendia T. Dixon also expressed their concern. The trial court conducted a bench voir dire of these four venirepersons. The trial court struck Workman for cause but refused to strike Harrington, Cannon, and Dixon.

Before exercising any peremptory challenges and following the trial court's refusal to remove Harrington, Cannon, and Dixon, Sullemon's counsel presented a bill of exception advising the court that as a result of the court's refusal to remove the challenged jurors for cause, Sullemon would be forced to use three of his six peremptory challenges to remove them; that he would use his remaining three peremptory challenges to strike three other panel members; and that he would be prevented from striking three other objectionable prospective jurors, namely C.A. Brawner, Ann Ticknor, and Doris Irvin, who remained on the jury panel and served as jurors in the trial of this cause.

## I. PRESERVATION OF ERROR

■ The first issue we must address is whether Sullemon properly preserved the alleged error of the trial court. Fidelity contends that Sullemon did not for two reasons. First, Sullemon failed to make a timely request for additional peremptory challenges. Second, Sullemon failed to establish on the record the necessity to allow panelists on the jury who were objectionable to him. Fidelity relies exclusively upon *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888 (Tex.1985).

In *Hallett*, the appellant challenged four jurors for cause, and the trial court refused all four challenges. After trial and after judgment was rendered against appellant, appellant's attorney filed a motion for judgment n.o.v. to which he attached an affidavit, wherein he stated that appellant had exhausted her peremptory strikes, that three of those challenges were used to strike three of the persons challenged for cause, and the remaining three challenges were used to strike other objectionable jurors. One of the jurors challenged for cause actually served on the jury. Because appellant had challenged the juror for cause, appellant argued it was not necessary to advise the court a second time that an objectionable juror would be permitted to serve.

The Texas Supreme Court in *Hallett* stated that the correct rule for preserving error was set forth in *Hammon v. Texas New Orleans Railway Co.*, 382 S.W.2d 155 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 832, 86 S.Ct. 73, 15 L.Ed.2d 76 (1965). In that case, the trial court overruled plaintiff's challenge of one

juror for cause. This juror did not serve on the jury. Not until the hearing for a new trial did plaintiff make it known that one of the jurors who served was objectionable. The court in *Hammon* said:

[I]n order to complain, plaintiff would be required to show that prior to the exercise of his peremptory challenges, he apprised the trial court that one of the jurors was *obnoxious* to him and that he would have challenged that juror had he not been forced to exhaust a challenge on an objectionable juror.

*Id.* at 162 (emphasis added). The *Hallett* opinion also relied upon *Texas General Indemnity Co. v. Moreno*, 638 S.W.2d 908 (Tex.Civ.App.—Houston [1st Dist.] 1982, no writ). There, the trial court overruled challenges for cause against two jurors. After testimony was closed, the insurance company complained by bill of exceptions that it had been forced to use two peremptory challenges to strike the two jurors challenged for cause and, consequently, it had no challenges left to strike two undesirable jurors who served on the jury. The court held the bill was not timely, stating:

In order to properly complain, the appellant would be required to show that before it exercised its peremptory challenges, it apprised the trial court that two of the prospective jurors were *objectionable* to it and that it would have challenged those jurors had it not been forced to exhaust two challenges on objectionable jurors.

*Id.* at 912 (emphasis added). Given this law, the court in *Hallett* held that by waiting until the trial had ended before complaining, plaintiff had waived her error.

However, within the *Hallett* opinion, the court said:

[H]arm occurs only if the party uses all of his peremptory challenges and is ... prevented from striking other objectionable jurors from the list because he has *no additional peremptory challenges.* It is at this point that any harmful error occurs, i.e., when the court is made aware that objectionable jurors will be chosen. Thus it is incumbent upon the complaining party to inform the trial

court at that time of the error. *Once informed, the court is able to determine if the party was in fact forced to take objectionable jurors.*

*Hallett*, 689 S.W.2d at 890 (emphasis added). Fidelity relies upon the emphasized portions for its argument that (1) Sullemon was required to request additional peremptory challenges, and (2) Sullemon was required to establish on the record how the jurors were objectionable so that the trial court could determine if the jurors were "in fact" objectionable. Because Sullemon did not request additional peremptory challenges and because Sullemon merely objected to the jurors without establishing on the record how the jurors were objectionable, Fidelity contends that Sullemon failed to preserve error. We disagree.

The case law requires that a party make its objection before exercising its peremptory challenges, that a party apprise the trial court that, because it refused to strike certain prospective jurors for cause, the party was forced to use some of its peremptory challenges on them, and that a party show the court that other jurors who were "obnoxious" or "objectionable" would have been peremptorily challenged had the party not been forced to use its challenges on other jurors who should have been struck for cause. *Texas General Indemnity Co. v. Moreno*, 638 S.W.2d at 912; *Hammon*, 382 S.W.2d at 162. Sullemon met all of these requirements.

The *Hallett* decision does not require an objecting party to request additional challenges. The opinion's language, quoted earlier, merely states that a party must show that because it has used its peremptory challenges on jurors A and B who should have been struck for cause, the peremptory challenges used on jurors A and B are no longer available to strike jurors Y and Z, whom the party wanted to strike and would have been able to strike had the court properly struck jurors A and B for cause. The language nowhere states that additional peremptory challenges must be requested in order to preserve error. *But see Red River Pipeline v. Amonett*,

695 S.W.2d 802, 807 (Tex.App.—Amarillo 1985, no writ).

The *Hallett* opinion does not require the objecting party to establish facts on the record showing why or how the prospective jurors (Y and Z in the above example) are objectionable. The precise language is: "Once informed, the court is able to determine if the party was in fact forced to take objectionable jurors." *Hallett*, 689 S.W.2d at 890. The fact to be determined by the court is whether the objecting party would have in fact used the peremptory challenges had they been available. If the objecting party had no intention of peremptorily striking any other panel members, no harm is shown by the court's failure to excuse an unqualified juror. *Id.* at 889–90; *Cf. Yecker v. San Antonio Traction Co.*, 33 Tex.Civ.App. 239, 76 S.W. 780 (San Antonio 1903, writ ref'd) (failed to exhaust peremptory challenges). The objecting party illustrates harm by showing the court that it found other panel members obnoxious or objectionable but that it was unable to strike them because it was forced to use peremptory strikes on panel members whom the court should have struck for cause. We find no merit in Fidelity's argument. We hold that Sullemon has preserved error.

## II. THE MERITS

Sullemon contends that panel members Harrington, Cannon, and Dixon were prejudiced as a matter of law and that Fidelity's and the court's attempts to rehabilitate them were unavailing because once disqualified, a panel member may not be rehabilitated. Fidelity responds that the panel members were not disqualified as a matter of law, that the trial court's determination was factual, and that its finding does not constitute an abuse of discretion. Fidelity contends it and the court were not attempting to rehabilitate the jurors; rather, Fidelity and the court were attempting to clarify the panel members' positions.

The disqualification of a member of a jury panel is governed by section 62.105(4) of the Texas Government Code, which provides: "A person is disqualified to serve as a petit juror in a particular case if he ... has a prejudice in favor or against a party in the case." TEX.GOV'T CODE ANN. § 62.105(4) (Vernon Pamph.1986). The Texas Supreme Court has defined "prejudice" as "prejudgment" and, as such, "embraces bias." *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex.1963).

The court in *Compton* further stated that bias as a ground of disqualification requires "an inclination toward one side of an issue rather than to the other" to such an extent that "the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality." *Compton*, 364 S.W.2d at 182. *Compton* held that a member of a jury panel is disqualified from jury service in the case not only when he has bias or prejudice for or against the *litigant* personally but also when he harbors such against the *subject matter* of the litigation. *Id.*

■ Once prejudice in the mind of a member of the jury panel is established, that member is automatically disqualified from serving on the jury as a matter of law. *Id.; see also Gum v. Schaefer*, 683 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1984, no writ). All discretion is removed from the trial court, and it must dismiss the venireman. *Compton*, 364 S.W.2d at 182; *Carpenter v. Wyatt Construction Co.*, 501 S.W.2d 748, 750 (Tex.Civ.App.— Houston [14th Dist.] 1973, writ ref'd n.r.e.). Once a prospective juror admits bias or prejudice, he or she cannot be "rehabilitated," and affirmations that bias or prejudice can be set aside and the case decided on the law and evidence must be entirely disregarded. *Gum*, 683 S.W.2d at 808; *Carpenter*, 501 S.W.2d at 750.

■ To assert that a fact is established as a matter of law is to assert that the evidence establishes it conclusively. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas Law Review 361, 364 (1960). When a trier of fact refuses to find a fact in favor of the party having the burden of proof, the question on appeal is not whether competent evidence would sustain such finding if made; rather, the question is whether

there was a capricious disregard of competent evidence in the refusal so to find. *Travis v. Hall*, 95 Tex. 116, 65 S.W. 1078 (1901); 5A C.J.S. *Appeal & Error* § 1675 (1958). A refusal to find a proposed fact is affirmable when there is a conflict in the evidence, when it can be said that the inferences are not all one way, or when an opinion to the contrary might be lawfully formed. *See Travis*, 65 S.W. at 1079; 5A C.J.S. *Appeal & Error* § 1675 (1958).

■ When a juror is not found biased or prejudiced as a matter of law, whether the juror is nevertheless sufficiently biased or prejudiced to merit disqualification is a factual determination to be made by the court. *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963); *see Gum*, 683 S.W.2d at 807. Whenever the evidence does not conclusively establish the panelist's disqualification as a matter of law, appellate courts must consider all the evidence in the light most favorable to upholding the trial court's ruling. *Gum*, 683 S.W.2d at 807; *Bullard v. Universal Underwriters Insurance Co.*, 609 S.W.2d 621, 624 (Tex.Civ. App.—Amarillo 1980, no writ). The trial court's overruling a challenge for cause carries with it an implied finding that bias or prejudice does not exist to such an extent as to constitute a disqualification and such finding will not be disturbed in the absence of an abuse of discretion. *Ramirez v. Wood*, 577 S.W.2d 278, 285 (Tex. Civ.App.—Corpus Christi 1979, no writ).

## HARRINGTON

■ We must determine whether Harrington disqualified himself as a matter of law. If he did not, we must then determine whether the trial court abused its discretion when it ruled that Harrington was not biased or prejudiced. The court initiated the questioning of Harrington.

THE COURT: I'm not asking you whether you agree with that definition or not, but simply ask you to employ that definition in determining whether or not his condition meets that definition.

HARRINGTON: What I want to know is what the definition means. Does that mean that he cannot get and keep any kind of employment, total incapacity?

THE COURT: I don't want to delve into that. It means what it says....

HARRINGTON: Maybe if I read it a couple of more times.

THE COURT: All in context.

HARRINGTON: I think I can apply it according to the evidence that I heard if I know and in my mind understand what it says up there.

Sullemon's counsel next questioned Harrington.

[SULLEMON'S COUNSEL]: If the evidence shows that my client has been working and is employed by his uncle, working in a bar, is your feeling about this definition such that regardless of what that definition says you could not find that my client is totally incapacitated while he is employed and earning a paycheck every month?

HARRINGTON: I don't think I could.

Sullemon contends that at this juncture Harrington has disqualified himself as a matter of law and could not be rehabilitated. We disagree. "In order to hold that this juror was biased as a matter of law the testimony should compel us to conclude that the juror [would be biased.]" *Swap Shop*, 365 S.W.2d at 154. Harrington did not say that he would not follow the definition; Harrington has expressed a doubt as to his ability to follow it. This testimony does not compel us to conclude that Harrington was biased or prejudiced. *Cf. Ramirez*, 577 S.W.2d at 285 (answer to general question did not establish prejudice as matter of law; attorney failed to further test original response by adding variables to restrict previous general and unconditional question). An example of when a panel member disqualifies himself is found in *Gum v. Shaeffer*. In *Gum*, when asked whether he would lean toward one side of the litigation, the panel member responded, "To be honest, I think I would." *Gum*, 683 S.W.2d at 807.

In an effort to clarify Harrington's position, Fidelity's attorney asked him whether his answer would be the same if Fidelity showed that Sullemon's uncle employed

Sullemon only out of the goodness of his heart and that Sullemon was not otherwise capable of working. Harrington answered:

> If I felt he was just sitting on a stool doing something that required no effort or anything and that was all he could do, I may. I could see him maybe totally incapacitated where you're talking normal employment a person has to get up and move around and do more than just sit in one spot.
>
> [Fidelity's counsel]: Do you feel that you could look at all the evidence before you and make the decision about whether or not to apply the definition?
>
> HARRINGTON: I think so.

> \* \* \* \* \* \*

> THE COURT: [D]o you think you could read and understand that definition as written in plain English, do you think you could read and understand it?
>
> HARRINGTON: I think I could.
>
> THE COURT: Could you apply it to the facts of this case?
>
> HARRINGTON: I think I would be able to.

The trial court had the opportunity of observing Harrington as he testified and was in a better position than we to evaluate Harrington's sincerity and his capacity for fairness and impartiality. *Swap Shop*, 365 S.W.2d at 154. This fact finding will not be disturbed in the absence of an abuse of discretion. *Ramirez*, 577 S.W.2d at 285. Because there is testimony to support the trial court's finding, we hold there was no abuse of discretion.

## CANNON

■ As with Harrington, we must first determine whether Cannon disqualified herself as a matter of law, and if not, whether the trial court abused its discretion in ruling she was neither biased nor prejudiced. After a few preliminary comments, the trial court said to Cannon:

> I will give you a definition of total incapacity. Now, you don't have to like my definition, you may not like my definition. Could you follow my definition though?

> CANNON: Well, I do have an idea of my own on it.
>
> THE COURT: I'm certain you do. You wouldn't be usual if you didn't....

> \* \* \* \* \* \*

> THE COURT: [D]o you think you would have any trouble listening to evidence and answering that kind of question with the definition?
>
> CANNON: No, I don't think so.

> \* \* \* \* \* \*

> [SULLEMON'S COUNSEL]: My question is this. Do you think it's wrong for a person to claim to be totally incapacitated while he is still working?
>
> CANNON: That's difficult for me, yes.
>
> [SULLEMON'S COUNSEL]: Do you think there's a problem?
>
> CANNON: Yes.
>
> [SULLEMON'S COUNSEL]: All right.
>
> [FIDELITY'S COUNSEL]: Do you think that's the only issue that is important or would you look at all of the evidence and—
>
> CANNON: I would listen to everything.

Nothing Cannon said compels us to conclude she was biased or prejudiced. She was not disqualified as a matter of law. *Swap Shop*, 365 S.W.2d at 154. Some testimony supports the trial court's finding. The trial court did not abuse its discretion. *Ramirez*, 577 S.W.2d at 285.

## DIXON

■ As with Harrington and Cannon, our first concern is whether Dixon disqualified himself as a matter of law. If not, we next decide whether the trial court abused its discretion. The court began the questioning.

> THE COURT: What I'm asking you is if I give you that would you use the definition that I give you in answering questions?
>
> DIXON: If I could understand it. I feel I have a hard time sometimes understanding words or meanings of words so—

> \* \* \* \* \* \*

THE COURT: You can read and write the English language and there's no problem there, is there?

DIXON: Right.

THE COURT: Okay. So if you could get a little bit of time to read it over and think about it, do you think you would have any trouble with it? ...

DIXON: I don't know.

THE COURT: Would you be willing to try?

DIXON: Yeah.

\* \* \* \* \* \*

[SULLEMON'S COUNSEL]: Is it your testimony as of this time you don't feel you understand it and therefore wouldn't apply it?

DIXON: Right.

[SULLEMON'S COUNSEL]: All right. Let me ask you also this. If a person is working at some kind of light work and still drawing a paycheck, do you think that it's wrong for them to say they are totally incapacitated and come to Court asking to be paid for total incapacity benefits?

DIXON: No.

\* \* \* \* \* \*

[FIDELITY'S COUNSEL]: [I]f I take away what we have said, could you sit there and read it and understand it?

DIXON: Oh, no.

At best, Sullemon's counsel established that Dixon had difficulty understanding the definition; however, Dixon's response to counsel's example correctly applied the legal principles behind the definition; consequently, we see nothing that compels us to conclude Dixon was biased or prejudiced. Dixon did not disqualify herself as a matter of law. *Swap Shop*, 365 S.W.2d at 154. The evidence supports the trial court's finding. No abuse of discretion is shown. *Ramirez*, 577 S.W.2d at 285.

Sullemon's point of error is overruled. The judgment of the trial court is affirmed.