grossman v ciba 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-207-CV





WALTER G. GROSSMAN AND GEORGIA S. GROSSMAN, INDIVIDUALLY 


AND AS REPRESENTATIVES AND NEXT FRIENDS OF SIDNEY JOSEPH GROSSMAN,


A MINOR, AND AS REPRESENTATIVES AND HEIRS AT LAW OF THE ESTATE OF


SAMUEL DAVID GROSSMAN, DECEASED AND BEVERLY G. REEVES, ATTORNEY,



 APPELLANTS


vs.





CIBA PHARMACEUTICAL COMPANY, A DIVISION OF CIBA-GEIGY


CORPORATION, W. WAYNE GRANT, M.D., ALLEN SONSTEIN, M.D.


AND J. DOUGLAS HUDSON, M.D.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 454,281, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 




 The Grossmans appeal the trial court's judgment, asserting in five points of error
that the court erred by refusing to strike two jury panel members for cause, thereby forcing the
Grossmans to exercise two peremptory challenges and then accept an objectionable juror when
they had no strikes remaining. The Guardian Ad Litem for Sidney Grossman ("the Guardian")
appeals the amount of compensation awarded her and the allocation of her fee. Appellees
complain by cross-point that no fees should have been assessed against them as the prevailing
parties at trial. We will affirm the trial court's judgment.

 The Grossmans brought a wrongful death and survival action against appellees
based upon alleged negligence, breach of warranty, and other acts that resulted in the death of
Samuel Grossman. During the voir dire, the Grossmans challenged two members of the jury
panel on the ground that they were biased and therefore must be excused for cause. The trial
court overruled the challenges and permitted the two members to remain on the panel. 

 During voir dire, Mary Weir Ziegler volunteered that a few months earlier her
husband had received a monetary award from Ciba Pharmaceutical Company, a defendant in the
lawsuit, but that this fact had no bearing on her or her jury service. She admitted she might
"lean" toward the medical profession since both she and her husband were biochemists and he
worked with doctors. She explained that she "could be fair about it" and that she revealed this
information merely to be honest about her background. She answered "probably" when asked
whether she would "tend to perhaps give" Ciba's experts more credibility. By this she meant that
she had no prejudice against drug manufacturers and that "chemical" was not a bad word in her
mind. She insisted that her husband's connection with Ciba and the drug industry would not affect
her, that she could be a fair juror, and that she could decide the case based upon the evidence at
trial. Ziegler stressed that as a juror she would attempt to balance her personal feelings, which
as a parent included sympathies for the Grossmans.

 The parties also questioned Ziegler about her views concerning a bystander's right
to recover damages. She disagreed that the law should impose liability for emotional harm
suffered by anyone who viewed an accident. The court informed her that Texas law does not
allow such a wide-ranging theory of recovery. She candidly expressed independent opinions on
theories of liability and on damages and stated that she would need psychiatric evidence in order
to award damages for emotional distress. Her answers reflected some confusion as to the jury's
role in deciding the law. After the court informed her that the jury decides only factual issues and
the court would determine all legal matters, she expressed confidence that she could answer the
questions posed in the jury charge based upon the evidence without regard to the effect of her
answers.

 Susan Abold, the second jury panelist at issue, stated that her father had been a
doctor who conducted drug research, which might influence her, but she thought she could be
objective. Her sympathies lay with the appellees but she felt she could overcome these tendencies
and be objective. She once referred to herself as biased, yet several times she agreed that she
could base her decision as a juror on the evidence presented at trial. She expressed general
concern about a liability crisis involving ever-increasing damages awarded to plaintiffs. However,
when asked if she could award appellants the amount of damages proven by the evidence, even
five million dollars, she answered that she could. She further stressed that her concerns about
high damage awards would not affect her treatment of liability issues.

 The trial court awarded each side, including appellants, two additional peremptory
challenges, for a total of eight. Before exercising the challenges, appellants again requested that
the court excuse the two jurors for cause. Appellants further suggested the court do so and then
reduce the peremptory challenges to six. Upon the denial of their challenges for cause, the
Grossmans informed the court that they would use two peremptory challenges to remove Ziegler
and Abold. They further asserted that two panel members they found objectionable, Foley and
DeLeon, would remain on the panel after their peremptory challenges were exhausted. Foley
subsequently served on the jury. The trial court again refused to excuse Abold and Ziegler, and
appellants then used their two additional challenges on these two panelists. After trial, pursuant
to the jury's verdict, the court rendered a take-nothing judgment against the Grossmans. 

 The Grossmans complain of the court's refusal to excuse Ziegler and Abold for
cause. See Tex. R. Civ. P. 228. By statute, a person is disqualified from jury service if he "has
a bias or prejudice in favor or against a party in the case." Tex. Gov't Code Ann. § 62.105(4)
(West Supp. 1992). One may be disqualified due to a bias or prejudice against the subject matter
of the litigation, as well. Compton v. Henrie, 364 S.W.2d 179, 185 (Tex. 1963). Prejudice is
defined as prejudgment, including bias. Id. at 182. Bias reflects an inclination toward one side
of an issue but does not constitute a disqualification unless "the state of mind of the juror leads
to the natural inference that he will not or did not act with impartiality." Id.

 A jury panelist may be biased so as to be disqualified as a matter of law. If so, the
court has no discretion and must dismiss the panelist. Id. When disqualification is not
conclusively established as a matter of law, whether a panelist is biased or prejudiced is a factual
determination for the trial court and it is within the court's discretion to find whether bias
nonetheless exists. Swap Shop v. Fortune, 365 S.W.2d 151, 154 (Tex. 1963). When a court fails
to find bias, the question on appeal is whether it capriciously disregarded the competent evidence. 
Sullemon v. U.S. Fidelity & Guar. Co., 734 S.W.2d 10, 14-15 (Tex. App.--Dallas 1987, no writ). 
Appellate courts must consider all the evidence in the light most favorable to upholding the ruling
below. Compton, 364 S.W.2d at 182; Sullemon, 734 S.W.2d at 15; Gum v. Schaefer, 683
S.W.2d 803, 807 (Tex. App.--Corpus Christi 1984, no writ).

 In order to preserve error for refusal to excuse a panelist for cause, a party must
advise the court, prior to exercising its peremptory challenges, that it will exhaust these challenges
and thereafter specific, objectionable jurors will remain. Hallett v. Houston Northwest Medical
Ctr., 689 S.W.2d 888, 890 (Tex. 1985). Appellees claim that the Grossmans' failure to comply
with procedural requirements prevents us from reaching the merits of their appeal. First, they
insist that a party must specify in which order it would have used its peremptory challenges upon
the objectionable jurors who remain on the panel as a result of the denial of its motion to excuse
others for cause. Specifically, they argue the Grossmans should have designated whether they
found DeLeon or Foley more objectionable.

 Appellees cite no authority supporting such a contention. Indeed, in Sullemon, one
court of appeals refused to add any requirements to those outlined by the supreme court in Hallett. 
It stated that the complaining party need not request additional challenges nor give reasons why
it finds the potential jurors who remain objectionable. Sullemon, 734 S.W.2d at 13-14.

 Next, appellees contend that even if the trial court erred, this action was rendered
harmless by the unanimous verdict returned by the jury. Even if Foley had not been on the jury,
they argue, at least an 11-to-1 verdict in their favor would still have been returned. They cite two
recent cases that suggest such reasoning is valid, Galvan v. Aetna Casualty Insurance Co., 831
S.W.2d 39, 40 (Tex. App.--El Paso 1992, writ denied) and Beavers v. Northrop Worldwide
Aircraft Services, Inc., 821 S.W.2d 669, 681 (Tex. App.--Amarillo 1991, writ denied). Both cases
used this logic as an alternate ground for their holdings, citing Palmer Well Services, Inc. v. Mac
Trucks, Inc., 776 S.W.2d 575 (Tex. 1989), in which the supreme court found as a matter of law
that harmful error existed when a juror who had been indicted for a felony was incorrectly
allowed to serve and a 10-to-2 verdict was returned. Id. at 577.

 Palmer, however, did not hold that error in failing to exclude jurors for cause is
always harmless when a jury returns a unanimous verdict. It merely pointed out that without the
disqualified panelist the remaining nine qualified jurors could not have returned a verdict. 
Furthermore, Palmer involved the clear situation where disqualification was based on a panelist's
felony indictment, and the harmless error doctrine might arguably apply if a unanimous verdict
were involved. When a juror should have been excluded for bias or prejudice, however, an
absence of harm simply cannot be assumed where the biased juror may assert influence over other
members of the jury, even though the fact may not be shown. See Tex. R. Civ. P. 327(b).

 Assuming the Grossmans' complaint of error is preserved, the question is whether
Ziegler and Abold should have been excused for cause. Several cases have involved similar
questions of suggested bias. Such was the situation in McBroom v. Brown, 277 S.W.2d 310 (Tex.
Civ. App.--Beaumont 1955, writ ref'd n.r.e.). The juror at issue said at one point he could not
render a fair and impartial verdict, yet elsewhere insisted he could follow the evidence to reach
an appropriate result. The court held that a question of fact was presented by such conflicting
answers and therefore the lower court's ruling must be upheld. Id. at 313. In Sullemon, a juror
professed that he might not follow the court's legal definition of "total incapacity" but later said
he would try to disregard this tendency when examining the evidence. 734 S.W.2d at 16. In
Ratcliff v. Bruce, 423 S.W.2d 614 (Tex. Civ. App.--Houston [14th Dist.], writ ref'd n.r.e.), cert.
denied, 393 U.S. 848 (1968), a potential juror in a lawsuit against several physicians was herself
the wife of a doctor. The court found she was qualified to serve when she insisted she would be
honest and fair. Compton, the seminal Texas case on bias, involved a juror who disapproved of
anyone who sued to recover for an injury, insisting that he himself would "grin and bear it." 364
S.W.2d 179. Nevertheless, the trial court refused to excuse him for cause and the supreme court
overturned the appellate court's holding that he was disqualified. 

 In examining the record, we decline to hold that either panelist was proven to be
biased as a matter of law. Further, viewing the evidence in the light most favorable to the ruling,
neither was the trial court's failure to find them biased or prejudiced contrary to the evidence so
as to constitute an abuse of its discretion. Both gave conflicting answers when asked whether they
could judge the case fairly. Although the trial court observed that Abold was "close to the line"
of disqualification, it was better able to observe the panelists' demeanor and reactions to the
questions asked and determine their ability to serve impartially. We overrule the Grossmans' five
points of error, all of which relate to the issue of bias.

 In a single point of error, the Guardian appeals the trial court's award of her fee,
assessed as a court cost. She first complains that the amount awarded her, $10,000, was
insufficient to compensate her for her work. She asks that this Court award her $88,000, the
amount she claims to be the value of her effort. 

 The fee awarded a guardian ad litem lies within the discretion of the trial court and
will not be overturned unless a clear abuse of discretion is apparent from the record. Simon v.
York Crane & Rigging Co., 739 S.W.2d 793, 794-95 (Tex. 1987); Celanese Chem. Co., Inc. v.
Burleson, 821 S.W.2d 257, 260 (Tex. App.--Houston [1st Dist.] 1991, no writ). The issue is not
whether the appellate court agrees with the amount or would have awarded a greater sum, but
whether the trial court properly exercised its discretion. We cannot say that the record reflects
an abuse of discretion on the part of the trial court.

 A guardian ad litem represents a minor only where its parents' interests diverge
from its own. Davenport v. Garcia, 834 S.W.2d 4, 24 (Tex. 1992). The trial court therefore
determined that the sum of $10,000 adequately compensated the Guardian for the time spent in
pursuance of her duty to represent a minor to the extent the minor's interest was adverse to its
parents and may have determined a portion of the Guardian's work concerned matters which
presented no such conflict. See Tex. R. Civ. P. 173. 

 The Guardian complains that the only "evidence" before the court was her own
assessment of the value of her time and in effect argues that the court was bound to accept and
rule in accordance with her testimony. The finder of fact may accept or agree with all, part, or
none of a witness's testimony about the work performed, its necessity, and its value. The
evidence, however persuasive, is not binding or dispositive of the matter. Although an appointed
attorney is entitled to reasonable compensation, we know of no rule that a court-appointed ad litem
must be compensated at the rate properly chargeable in other instances of employment. Granted,
the trial was long and involved, and the trial court believed the Guardian's participation was
valuable in reaching a just result. But the trial court may have determined that the fee awarded
was commensurate with the parties' ability to pay and the result achieved. The court had
witnessed the entire trial and had sufficient information upon which to base its award. 
Furthermore, it is well established that there need not be any evidence in the record to support the
court's award of ad litem fees. Alford v. Whaley, 794 S.W.2d 920, 925 (Tex. App.--Houston [1st
Dist.] 1990, no writ); Transport Ins. Co. v. Liggins, 625 S.W.2d 780, 785 (Tex. App.--Fort
Worth 1981, writ ref'd n.r.e).

 The Guardian also complains that the trial court erred by assessing only half of the
ad litem's fee against the appellees. She would have us force the appellees, the prevailing parties,
to pay the entire sum awarded her. She cites no authority supporting her contention that failure
to assess all her fee against appellees constitutes error. Appellees, on the other hand, insist in
their cross-point of error that as prevailing parties they should not be required to pay any ad litem
fees; instead, all of her fee should be assessed against the Grossmans, as normally the losing party
must pay all court costs. Tex. R. Civ. P. 131.

 The trial court in its discretion may assess all or part of the costs against the
prevailing party as long as "good cause" exists. Tex. R. Civ. P. 141. Unless the record
demonstrates an abuse of discretion, the trial court's assessment of costs for good cause should
not be disturbed on appeal. Rogers v. Walmart Stores, Inc., 686 S.W.2d 599, 601 (Tex. 1985). 
An appellate court should scrutinize the record to determine whether it supports the trial court's
decision to tax the prevailing party with the costs. Id.

 We hold that the record reflects evidence from which the trial court could determine
good cause existed for assessing a portion of the costs against appellees. For example, appellees
originally agreed that an ad litem for the child should be appointed. Later, after the Guardian had
spent significant time successfully opposing appellees' motion for summary judgment, appellees
attempted to terminate her participation at trial. The court could have found that these tactics,
while acceptable, required additional work by the Guardian and were thus grounds for assessing
part of the ad litem costs against appellees. We overrule appellees' cross-point.

 For the same reasons, we cannot find an abuse of discretion in the court's refusal
to apportion all of the costs against the prevailing party. The lower court assessed costs equally
between the parties, just as the trial court did in Rogers. The record supports this allocation. 
Moreover, the Guardian fails to cite authority that gives her standing to complain about which
party is ordered to pay her fee. The Grossmans do not challenge by a specific point of error the
award of fees against them. We overrule the Guardian's point. 

 As we have overruled the Grossmans' points of error, we need not reach appellees'
cross-points relating to other issues in the trial. The judgment is affirmed.



 

 Marilyn Aboussie, Justice

[Before Justices Powers, Aboussie and B. A. Smith; Justice Powers not participating]

Affirmed

Filed: December 23, 1992

[Do Not Publish]