Opinion issued April 30, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00825-CV

————————————

**KORLYNN V. OBEY AND BARBARA HENDERSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF TREAVOR M. OBEY, DECEASED; AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF TREAVOR M. OBEY, DECEASED, INCLUDING, BUT NOT LIMITED TO, KORLYNN V. OBEY AND BARBARA HENDERSON, Appellants**

**V.**

**EAST HOUSTON SURGICAL ASSOCIATES, P.A. AND AUDENCIO ALANIS, M.D., Appellees**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2009-38368

# MEMORANDUM OPINION

In this appeal from a defense verdict in a medical malpractice case, appellants Korlynn V. Obey and Barbara Henderson, individually and on behalf of the Estate of Treavor M. Obey and all wrongful death beneficiaries, including themselves, argue that the trial court erred in denying their motion to strike a juror for bias, who appellees failed to rehabilitate, and thus, deprived them of their right to a fair trial. We affirm.

## Background

Treavor M. Obey died nineteen days after undergoing a gastric-bypass procedure performed by appellee, Audencio Alanis, M.D.[1] Treavor Obey's son, Korlynn V. Obey, and Treavor's mother, Barbara Henderson, subsequently sued Dr. Alanis and his professional association, appellee, East Houston Surgical Associates, P.A., alleging that both appellees were negligent and grossly negligent in the care and treatment of Treavor in connection with her post-procedure follow-up care.

Appellants' counsel began voir dire by asking each prospective juror to identify themselves and state if they, or any of their close family or friends, worked in a medical profession. Several prospective jurors indicated that they did—

---

[1] Trial testimony regarding the specific medical facts of this case, including the care and treatment provided, are not pertinent to this appeal which only challenges the trial court's refusal to strike a juror for cause during voir dire.

including the fourteenth prospective juror to answer. Counsel then discussed with the prospective jurors the burden of proof, mistakes that physicians may or may not make, possible errors in judgment, degrees of such errors, and whether or not the jurors could hold a physician responsible for an error in judgment. One such exchange with a venire member identified by appellants as Prospective Juror number 14, went as follows:

> MS. VAUGHAN: Would you be able to apply the law regarding burden of proof, that the plaintiff has to prove just more likely than not, just over 50 percent that –
>
> PROSPECTIVE JUROR: That makes it a lot harder. Yeah.
>
> MS. VAUGHAN: Okay. Would you require the plaintiff to prove their case more than just over the 50 - yard line or just more than 50 percent?
>
> PROSPECTIVE JUROR: Yeah. I mean it would - - I would think so. Yeah.
>
> MS. VAUGHAN: Okay.
>
> PROSPECTIVE JUROR: I mean, if it's that close, yeah.

Appeellees' counsel also questioned this same prospective juror as to whether he would require greater proof than a preponderance of the evidence.

> MR. FEEHAN: If you don't think about 50.1 percent, if you think about the greater weight of credible evidence and then it's more true than not - - is that something - - is that an instruction that you could follow?
>
> PROSPECTIVE JUROR: I would have to see - - yeah. - - a pretty clear difference. Yeah.

MR. FEEHAN: Well, you'd have to make a decision that it was more true than not, right?

PROSPECTIVE JUROR: Yeah.

At the end of voir dire, the trial court, acting *sua sponte*, struck seven prospective jurors for cause—numbers 2, 12, 13, 29, 39, 44, and 45. When the trial court asked if there were any additional challenges, appellants' counsel asked the court to strike prospective jurors numbers 14, 25, 27, 28, 35 because all five stated that they would require more than a preponderance of the evidence to find appellees liable. The discussion of Prospective Juror number 14 was as follows:

> MS. VAUGHAN: Yes, Your Honor. Juror Number 14 said that he would require more evidence than a preponderance, said that he could not make a decision based upon just a 50.1 percent or more-likely-than-not threshold, and we would challenge him for cause.

> THE COURT: Actually, your learned opposing counsel over here had a conversation with him, and I think he pretty much cured it because, if memory serves, he did say, "Well, I can follow what the judge says" and all that good stuff. Is my memory correct –

> MR. FEEHAN: Yes.

> THE COURT: -- on that, Mr. Feehan? That's what I thought.

> MS. VAUGHAN: He actually -- and – and my notes reflect from that that he still said he would have to have more evidence.

> THE COURT: That was --

> MS. VAUGHAN: He understood that – that – more truthful, not more truthful – could make a decision on whether or not somebody is

4

being truthful, but candidly said to Mr. Feehan that he would still require more evidence than the preponderance. So

THE COURT: That was his first answer, and then as they kept on talking he changed his story, so —— I was listening pretty hard core to him, too, because I had the same note, that he needed more. And he started to say it again, and then by the end of their conversation he changed his mind. So, not giving you that one. Next up?

Appellants' motions to strike prospective jurors numbers 25, 27, 28, and 35 proceeded in a similar fashion. The trial court granted appellants' motion to strike with respect to prospective jurors numbers 25 and 35, but declined to strike prospective jurors numbers 14, 27, and 28 for cause.

Contemporaneous with the submission of their peremptory strike list, appellants advised the trial court that they were having to exercise a peremptory challenge on Prospective Juror number 14, that they were out of peremptory strikes, and that they would have exercised a peremptory strike on Prospective Juror number 27 if they had not had to exercise one on Prospective Juror number 14. Prospective Juror number 27 was seated as a juror in this case. After a jury trial, the trial court entered a take-nothing judgment in favor of appellees.

## Discussion

In their sole issue on appeal, appellants contend that the trial court erred in denying their motion to strike Prospective Juror number 14 because said juror was disqualified from serving on the jury as a matter of law.

5

As appellees correctly point out, the portions of the record that appellants contend pertain to Prospective Juror number 14 do not specifically identify him by name or number. Nevertheless, having reviewed the record in its entirety, we are satisfied that appellants have preserved this issue for our review. Although counsels' exchanges with Prospective Juror number 14 do not identify him by name or number, the record sufficiently identifies the testimony of each of the other prospective jurors who were either challenged or struck for cause (2, 12, 13, 25, 27, 28, 29, 39, 44, and 45). This, plus the detail with which his testimony was discussed, is enough for us to be able to attribute the statements at issue to Prospective Juror number 14, and thus, enable us to decide this case on the merits.

### a. Standard of Review

A person is disqualified to serve as a juror on a particular case if he or she has a bias or prejudice in favor of or against one of the parties, TEX. GOV'T CODE ANN. § 62.105(4) (West 2013), or demonstrates "a general inability to follow the court's instructions regarding the law." *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 751 (Tex. 2006); *see* TEX. R. CIV. P. 226a. If a prospective juror's bias, prejudice, or inability to follow the trial court's instructions is established as a matter of law, the trial court must disqualify that person from service. *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998).

6

To disqualify a potential juror for bias or prejudice as a matter of law, the record must conclusively show that the potential juror's state of mind led to the natural inference that he could not act with impartiality. *See Vasquez*, 189 S.W.3d at 751. Thus, a prospective juror who unequivocally admits bias or prejudice is disqualified to serve as a juror as a matter of law. *Shepherd v. Ledford*, 962 S.W.2d 28, 34 (Tex. 1998); *Sullemon v. U.S. Fid. & Guar. Co.*, 734 S.W.2d 10, 14 (Tex. App.—Dallas 1987, no writ). Whether a prospective juror is biased or prejudiced is determined from the record as a whole. *See Cortez v. HCCI-San Antonio*, 159 S.W.3d 87, 92–93 (Tex. 2005). When a prospective juror's disqualification is not established as a matter of law, the trial court must make a factual determination as to whether the prospective juror is nevertheless sufficiently biased or prejudiced to merit disqualification. *See Sullemon*, 734 S.W.2d at 15 (citing *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex. 1963)). A trial court's decision overruling a challenge for cause carries with it an implied finding that bias or prejudice does not exist to the degree necessary to warrant disqualification. *Buls v. Fuselier*, 55 S.W.3d 204, 209–10 (Tex. App.—Texarkana 2001, no pet.).

We review such rulings on a challenge for cause for abuse of discretion. *Vasquez*, 189 S.W.3d at 753–54. This is because trial judges are in a better position to evaluate the prospective juror's sincerity in their response and capacity

for fairness and impartiality. *Cortez*, 159 S.W.3d at 93. A trial court abuses its discretion in refusing to disqualify a prospective juror for cause only if the record, viewed in the light most favorable to the trial court's ruling, shows that the venire member was not able or willing to set aside personal beliefs to act impartially. *Buls*, 55 S.W.3d at 210. A trial court does not abuse its discretion, however, by refusing to strike a juror who expresses bias or prejudice when the juror "equivocates" or is subsequently "rehabilitated." *See Cortez*, 159 S.W.3d at 93.

### b. Analysis

Here, appellants contend that Prospective Juror number 14 unequivocally stated that he would require appellants to prove their case beyond a preponderance of the evidence, and therefore, he was disqualified as a matter of law. We disagree. Prospective Juror number 14's testimony on this point is far from unequivocal. For example, when appellants' counsel asked him if he would be able to apply the law regarding the burden of proof "that the plaintiff has to prove just more likely than not, just over 50 percent," Prospective Juror number 14 answered, "That makes it a lot harder. Yeah." This could mean, as appellants suggest, that he would not be able to follow the court's instruction, or, it could mean, as appellees suggest, that he acknowledges that it would be hard to apply the correct burden, but he could do it nevertheless. Appellants' counsel then asked him, "Would you require the plaintiff to prove their case more than just over the

50-yard line or just more than 50 percent?" Prospective Juror number 14 answered, "Yeah. I mean it would - - I would think so. Yeah." Again, this answer is subject to two or more reasonable interpretations. Either the prospective juror is saying that he thinks he would "require the plaintiff to prove their case *more than just* over the 50-yard line" or that he thinks he would require the plaintiff to prove their case "*just more* than 50 percent." These are two different standards and it is not clear which standard Prospective Juror number 14 *thinks* he would require.

Even if we interpreted Prospective Juror number 14's responses to express an initial inclination to require proof beyond a preponderance of the evidence, further questioning suggests he could follow the trial court's instructions and apply the appropriate burden of proof. In particular, appellees' counsel asked him, "if you think about the greater weight of credible evidence and then it's more true than not . . . is that an instruction that you could follow?" Prospective Juror number 14 answered, "I would have to see - - yeah. - - a pretty clear difference. Yeah."

In light of these exchanges, Prospective Juror number 14's testimony is neither "unequivocal," nor does it conclusively establish that he would not follow the law as instructed by the trial court, and would, instead, require appellants to demonstrate a heightened degree of proof in order to prevail on their negligence claims against appellees. Viewed as a whole, the record fails to show that Prospective Juror number 14 was disqualified as a matter of law, and the trial court

did not err in denying appellants' challenge for cause with respect to this prospective juror. Moreover, because the record, taken as a whole and viewed in the light most favorable to the trial court's ruling, shows that Prospective Juror number 14 equivocated with respect to the degree of proof he required, and he testified that he could follow the trial court's instructions, we cannot say that the trial court abused its discretion when it denied appellants' motion to strike Prospective Juror number 14.

We overrule appellants' sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Jim Sharp
Justice


Panel consists of Justices Jennings, Higley, and Sharp.