**TEXAS GENERAL INDEMNITY CO., Appellant,**

v.

**Miguel S. MORENO, Appellee.**

**No. 01–81–0765–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 25, 1982.

Rehearing Denied July 29, 1982.

---

James J. Zeleskey, Zeleskey, Cornelius, Roger, Hallmark & Hicks, Lufkin, for appellant.

Roger Knight, Jr., Madisonville, for appellee.

Before PRICE, WARREN and DUGGAN, JJ.

PRICE, Justice.

This is a Worker's Compensation case. After a jury trial, appellee, Miguel S. Moreno, was awarded compensation for total and permanent disability.

On January 15, 1979, plaintiff was employed by Louisiana Pacific Corporation. He got on a conveyor belt in order to press lumber down on the belt. While he was doing this someone turned on the belt. The roller which is underneath the belt has

"teeth" in it that caught his pants and pulled him under the belt. He managed to pull himself from under the belt and called for help, and then passed out.

In its first three points of error the appellant complains that the trial court erred in entering judgment based on the jury's answers to special issues one, two and three wherein the jury found that the injury to plaintiff produced total and permanent disability because there was either no evidence or insufficient evidence to support the jury's findings to these issues.

It is well settled in Texas that a trial court judge cannot commit error in rendering a judgment on the verdict if the evidence the jury considered to base its findings is only insufficient or against the great weight and preponderance of the evidence. Consequently, a point of error which states that the trial court erred in rendering a judgment on a verdict because of the state of the evidence—if it is adequate for any purpose—is only a "no evidence" point. *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.*, et al., 462 S.W.2d 277 (Tex.1970). In considering the three above mentioned points of error, we need only to look for some evidence, regardless of how conflicting or how slight, on which the jury based its findings.

The record indicates by way of testimony and numerous photographs that the appellant received an extensive injury to his right leg. An orthopedic surgeon was called in because the appellee's sciatic nerve, the motor nerve that controls all of the muscles in the lower extremity of the body, was hanging out of the wound. The plastic surgeon, who testified about this injury and the results thereof, gave conflicting testimony as to whether the injury produced a total incapacity. He testified at one point that the injury did not extend into the buttock area and that the amount of disability would be in proportion to the amount of discomfort the appellee was having. However, he also stated that the injury would make him disabled as a total person. The appellee testified that when he

returned to work after the injury, he found that his back, hip and leg became stiff. Further, he cannot bend and suffers from pain. He also testified that he cannot lift heavy objects, that he has lost twenty pounds since the accident, that he cannot sleep well, and that by the end of his shift he has a severe headache from the pain.

It is obvious from the record that there is some evidence that the injury to the appellee is general in nature and is of a total and permanent capacity. Appellant's first three points of error are overruled.

In its fourth and fifth points of error, the appellant complains that the trial court erred in overruling appellant's challenges for cause to prospective jurors Ronald Lundy and L. D. Price, as each juror was disqualified as a matter of law.

During voir dire of the jury panel, two of the jurors expressed a prejudice towards the appellant. Mr. Ronald Lundy stated that two of his friends who had worked for Louisiana-Pacific Corporation died and were never compensated. He was asked by appellant's attorney if he could keep this out of his mind if he were on the jury and he answered "no, sir." He was then asked by the court if he could take the oath as a juror and not let his personal experiences enter into his decision. He stated that he could. However, the appellant's attorney immediately questioned him as to the inconsistency of his two answers and asked if the personal experience with his two friends could affect his answers, and he stated:

"Well, I couldn't give a positive answer. All I could to do is try to do it and make an unbiased decision."

The court held that he was qualified.

The other juror, Mr. L. D. Price, stated that he did not feel that he could be fair and impartial because he had a son-in-law who was killed on the job and stated that it was "such a long drawn out affair that I don't know if I could be fair or not." The judge asked this juror if he could follow the law and lay aside his personal experiences. He responded, "yes". Again, the appellant's attorney questioned the juror about

his feelings and the following discourse took place.

By Mr. Rogers: Mr. Price, I understood you to say in the first instance when Mr. Knight asked you the question "whether you could be fair", that you did not think you could be because of your personal experience of your son-in-law's death; is that right?

By Mr. Price: Yes. The way my daughter has been—I think it's been prolonged and—

By Mr. Rogers: Because of that, I understood you to say that you could not be fair in this case; is that right?

Mr. Price: I believe I would weigh a little heavier towards the insurance company.

By Mr. Rogers: Let me be sure I understand what you mean. Are you trying to tell us that you would be going to the box as a juror with some inclination to be more favorable to the party bringing the suit and having some bad feelings against the insurance company?

By Mr. Price: Right.

Due to the answers given by the prospective jurors, the appellant asked that each be challenged for cause. The court overruled both motions. The voir dire was concluded and the appellant made its peremptory challenges, striking both Mr. Lundy and Mr. Price from the list of prospective jurors. After the testimony at trial was concluded, the appellant complained, through a bill of exceptions, that it had been forced to use two peremptory challenges to strike the jurors challenged for cause. As a result it stated in such bill of exceptions that it had no challenges left to strike two undesirable jurors who served on the jury. The question is whether the bill made at such time was timely. We think not.

■ In order to properly complain, the appellant would be required to show that before it exercised its peremptory challenges, it apprized the trial court that two of the prospective jurors were objectionable to it and that it would have challenged those jurors had it not been forced to exhaust two challenges on objectionable jurors. *Palestine Contractors Inc. v. Perkins,*

386 S.W.2d 764 (Tex.Sup.Ct.1964); *O'Day et ux, v. Sakowitz Brothers* et al., 462 S.W.2d 119 (Tex.Civ.App.—Houston [1st Dist.] 1970, ref'd n. r. e.); *Hammon v. Texas and New Orleans Railroad Co.,* 382 S.W.2d 155 (Tex.Civ.App.1964, writ ref'd n. r. e.);

■ Prior to the time the peremptory challenges are made the complaining party has not been harmed by any unfavorable ruling. The harmful effect occurs only when an improper ruling forces the complaining party to accept undesirable jurors and no avenue of relief is available. The trial judge should be given an opportunity to eliminate the harmful effect created by an improper ruling at a time when relief is still available. It would be unfair to allow the complaining party the opportunity to decide that his case is not going the way he desires and then benefit from a subsequent complaint about his having had to accept undesirable jurors. Consequently, in the instant case, any error the trial judge committed by overruling the appellant's challenges for cause is not properly preserved and therefore not before us for consideration. Points of error four and five are overruled.

■ In his sixth, seventh, and eighth points of error, appellant complains that the trial court erred in failing to grant a mistrial because of the highly inflammatory and prejudicial statements of counsel for plaintiff in his closing argument to the jury and also that the cumulative effect of these statements caused the appellant harm. Appellant contends that two statements made by the appellee's attorney are prejudicial. The first statement made by the appellant's counsel during final argument was:

"If they had just taken the money the legislature had provided for this man and paid it to him rather than paying this lawyer to sit over here..."

This was objected to on the grounds that the appellee was making the argument that the appellant had no right to be in court. This was overruled and the appellee's attorney continued the same argument without any further objection or any request for the

court to instruct the jury to disregard it. This argument, while it appears improper, was provoked by appellant's argument which states:

"He said he had to hire a lawyer and he had to wait two years. You don't know what would have happened in this case if there had been some position to deal with other that what he asked you to do here, . . .

Had the argument complained about not been in response to appellant's argument, any error caused by it could have been cured by a proper instruction. However, any argument whether curable or incurable that has been invited or provoked is not harmful. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835 (Tex.1979).

 The second argument made by appellee complained about by appellant is as follows:

"Why don't they pay the benefits? Well, they can take that money and invest it and loan it out at 22 percent. Why should they be paying this guy any money? They have made enough money on the money they saved by not paying him any money to pay him five times over."

The appellant objected to the argument as being inflammatory and prejudicial. The objection was overruled, but no further mention was made of this matter. It would appear that this argument was improper but one where the error could have been cured by a proper instruction. The fact that a request for such an instruction was not made is not significant in light of the fact that the appellant timely objected and received an unfavorable ruling from the trial court. However, we feel that the error created by the improper argument is harmless and did not cause the rendition of an improper verdict in the case. To determine whether a particular error or accumulation of errors was reasonably calculated to cause, and probably did cause, the rendition of an improper verdict, we have examined the entire record. The test as to improper jury argument is whether a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Goforth v. Alvey,* 153 Tex. 449, 271 S.W.2d 404 (Tex. 1954); *Twin City Fire Insurance Company v. King,* 510 S.W.2d 370 (Tex.Civ.App.— Houston [1st Dist.] 1974, writ ref'd n. r. e.); Tex.R.Civ.Pro. 434 and 503. The above test was not met; points of error six, seven, and eight are overruled.

In his last point of error, appellant complains that the trial court erred in overruling appellant's objections to the definition of partial incapacity as contained in the court's charge because of the court's failure to include the definitions and instructions requested by the appellant.

The trial court submitted special issues to the jury which presented only the question of total incapacity and required a determination of whether the total incapacity, if any, was temporary or permanent. In addition to the special issues, the court submitted the following definition of partial incapacity:

"Partial Incapacity" means any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity. A person cannot have both total and partial incapacity at the same time.

The appellant, having pleaded and defended on the theory of partial incapacity, argues that a proper definition of partial incapacity is required to provide the jury the necessary guidance to reach a proper verdict. The appellant timely objected to the court's submitted definition of partial incapacity for the following reasons:

1. The definition is inadequate and incomplete because it fails to include any reference to plaintiff's ability to do at least lower paying work than before his injury, but nevertheless, able to get and keep employment.

2. The Court failed to include in such definition the reference to lower earning capacity of plaintiff and nevertheless his ability to get and keep a job.

3. The Court failed to define the term "earning capacity," and the jury is not properly instructed or advised as to the

matters which should be considered in connection with earning capacity as contained in the instruction on partial incapacity as given by the court.

The appellant not only objected to the court's definition of "partial incapacity," but it submitted, as an alternative instruction, a definition of "partial incapacity" and requested a definition of "earning capacity." The trial court overruled the appellant's objections and denied the requested instructions.

■ If a definition is given but is claimed to be defective, under Tex.R.Civ. Pro.Ann. 274, objection is the means of preserving the complaint. Such objection must point out distinctly the matters to which one objects and the grounds of the objection. Rule 274 supra. A request for submission is not an available alternative to an objection as a means of pointing out a defect in, or preserving a complaint to a submitted definition or instruction. *City of Dallas v. Priola,* 150 Tex. 423, 242 S.W.2d 176 (1951); *Lyles v. Texas Employer's Insurance Association,* 405 S.W.2d 725 (Tex. Civ.App.—Waco 1966, ref'd n. r. e.). Only if an instruction is omitted is a request a prerequisite to preserving the complaint. Tex.R.Civ.Pro.Ann. 279.

■ The sufficiency of the objection in the instant case is gauged by the standards set out in *Select Insurance Company v. Boucher,* 561 S.W.2d 474 (Tex.1978), where the Texas Supreme Court approved the definition of "partial incapacity" as drafted in the Texas Pattern Jury Charges and held that it comports with the intent of the Worker's Compensation Act. The Court further held that the term "earning capacity" has a somewhat technical meaning and is essential to a proper determination of partial incapacity.

■ Therefore, the appellant's complaint as to the elements asserted to be omitted is properly preserved by objection, Rule 274 supra, and the requested definition of "earning capacity" is in correct form, Rule 279 supra.

The appellant's ninth point of error is sustained and the judgment is reversed and remanded to the trial court.