**Lucille Helen ANDERSON, et vir, Appellants,**

v.

**William G. (Bill) HIGDON, et al, Appellees.**

**No. 10–84–138–CV.**

Court of Appeals of Texas, Waco.

July 25, 1985.

Rehearing Denied Aug. 15, 1985.

Rodolfo R. Munoz, San Antonio, for appellants.

Beverly Willis, Naman, Howell, Smith & Lee, P.C., W.C. Haley & Herbert S. Bristow, Haley & Davis, Waco, for appellees.

## OPINION

JAMES, Justice.

This suit was brought under the Texas Wrongful Death Statute, Article 4675, Ver-

non's Texas Civil Statutes, by Lucille Helen Anderson and Bernie F. Anderson, individually and as parents and next friends of Dion Anderson, Deceased, pursuant to 42 United States Code, Section 1983 to 1988 inclusive, for deprivation of the Deceased's constitutional rights under the Constitutions of the United States and of the State of Texas, and for violation of Article 5115, Vernon's Texas Civil Statutes. The Defendants in the case are (1) McLennan County, Texas; (2) Jack Harwell, individually and as Sheriff of McLennan County; (3) the City of Beverly Hills, Texas; and (4) William G. (Bill) Higdon, individually and as Chief of Police of the City of Beverly Hills, Texas.

Trial was to a jury resulting in the trial court entering judgment that Plaintiffs take nothing, from which Plaintiffs appeal. We affirm the trial court's judgment.

In August of 1979, Dion Anderson, Appellants' deceased son, had been receiving treatment at the Veterans Administration Hospital at Waco, Texas, for what had been previously diagnosed as paranoid schizophrenia. On August 28, 1979, Dion Anderson underwent two separate evaluations by Veterans Administration staff psychiatrists, following which it was concluded that Anderson should be placed on "open ward", which gave him freedom to roam the hospital grounds. Later, on the afternoon of August 28, 1979, Anderson left the hospital premises, during which time he (Anderson) threw a rock through the windshield of an unmarked police car then being driven by William G. (Bill) Higdon, Chief of Police of the City of Beverly Hills, Texas. The incident resulted in damage to the police vehicle and minor injury to Chief Higdon. Anderson then attempted to run away from Higdon, whereupon an officer was called to the scene to assist Higdon. Anderson was arrested on the hospital grounds, taken before a Magistrate, and thereupon committed to the McLennan County Jail on a charge of criminal mischief over $20.00 and under $200.00. From this time on, Anderson remained in the county jail until September 8, 1979, a period of ten days, when he was found dead in

his cell. Death had apparently resulted from head injuries sustained in a fall from his bunk.

Trial was to a jury, which in answer to special issues, found (or failed to find, as the case may be) as follows:

(1.) Jack Harwell, or his agents or employees, acting in the course of their employment, did suspect that Dion Anderson was insane at the time of his incarceration in the McLennan County Jail.

(2.) The jury failed to find that during his (Dion Anderson's) incarceration in McLennan County Jail, Jack Harwell or his agents or employees were deliberately indifferent to Dion Anderson's medical needs.

(3.) Special Issue No. 3 inquired if such deliberate indifference was a proximate cause of Dion Anderson's death. The answering of this issue was conditioned upon the jury's finding in Special Issue No. 2 that Harwell, or his agents or employees were deliberately indifferent. Since the jury's answer to Special Issue No. 2 was that Harwell et al were not deliberately indifferent, Special Issue No. 3 was not answered by the jury.

(4.) William (Bill) Higdon did suspect that the deceased Dion Anderson was insane at the time of his arrest.

(5.) The jury failed to find that the arrest was a proximate cause of Dion Anderson's death.

(6.) Jack Harwell or his agents or employees were acting pursuant to an order of the court in the incarceration of Dion Anderson in the McLennan County Jail.

(7.) Jack Harwell or his agents or employees acted in good faith in the incarceration of Dion Anderson.

(8.) William (Bill) Higdon acted in good faith in the arrest of Dion Anderson.

(9.) $1000.00 would have fairly and reasonably compensated the deceased Dion Anderson for his physical pain and mental anguish suffered before his death as a result of his incarceration.

(10.) $3000.00 would fairly and reasonably compensate Lucille H. Anderson and Bernie F. Anderson for their pecuniary loss resulting in Dion Anderson's burial expenses.

(11.) Zero dollars would fairly and reasonably compensate Dion Anderson for any substantive constitutional violation during the incarceration in question. In other words, the jury failed to find any damages in this special issue.

(12.) The jury failed to find any exemplary damages against either of Defendants Higdon or Harwell.

After the jury verdict the trial court entered judgment that Plaintiffs take nothing from any of the Defendants, from which Plaintiffs appeal. We overrule all of Plaintiff-Appellants' points and contentions and affirm the trial court's judgment.

Appellants' first point of error is stated two different ways. On page 3 of Appellants' brief, Appellants assert the trial court erred in failing to find as a matter of law that Defendants violated Article 5115, Vernon's Annotated Texas Statutes, by incarceration of the mentally ill deceased from August 29, 1979, until his death on September 8, 1979, in McLennan County Jail. Then on page 6 of their brief Appellants assert the trial court erred "in failing to apply the standard of conduct imposed by the Texas Legislature upon persons holding a person suspected of insanity in jail."

Article 5115 in its pertinent parts provides:

"The Commissioners Court shall provide safe and suitable jails for their respective counties, .... Such jails shall comply with the provisions of this Act and with the rules and procedures of the Commission on Jail Standards.

     *     *     *     *     *     *

"No person suspected of insanity, or who has been legally adjudged insane, shall be housed or held in a jail, except that such a person who demonstrates homicidal tendencies, and who must be restrained from committing acts of violence against other persons, may be held in a jail for a period of time not to exceed a total of twenty-four (24) hours, during which period he shall be kept under observation continuously. At the end of the twenty-four (24) hour period, such person shall be released or taken to a hospital or mental hospital. Furthermore, for such temporary holding of each person suspected of insanity, or who has been legally adjudged insane, there shall be provided a special enclosure or room, not less than forty (40) square feet and having a ceiling height of not less than eight (8) feet above the floor. Furthermore, the floor and the walls of such enclosure shall be provided with a soft covering designed to protect a violent person, temporarily held therein, from self-injury or destruction. One hammock not less than two (2) feet, three (3) inches wide and six (6) feet, three (3) inches long, made of elastic or fibrous material shall be provided in each such special enclosure."

Insofar as Chief Higdon and the City of Beverly Hills are concerned, it is undisputed that the City of Beverly Hills at no times material to this suit operated a jail; that after Chief Higdon caused the arrest to be made of Dion Anderson, and after having caused charges to be filed and having the deceased taken before a Magistrate, and after having the deceased put in the McLennan County Jail, thereafter neither the City of Beverly Hills nor Chief Higdon had anything to do insofar as the deceased's incarceration was concerned.

Article 5115 applies to governmental entities which operate jails; therefore said Article has no application to either Chief Higdon or the City of Beverly Hills.

In this case the deceased's incarceration was entirely in the McLennan County Jail. Appellants say the evidence showed noncompliance with the requirements of Article 5115 in that the deceased's cell was made of steel and concrete instead of the "soft covering" required by the statute; that he was housed for ten days instead of 24 hours, with no "continuous observa-

tion"; no "special enclosure", and no "hammock made of elastic or fibrous material."

As we understand it, Appellants argue that since the jury found that Jack Harwell or his agents or employees suspected that the deceased was insane at the time of his incarceration, and since the evidence showed that the deceased's incarceration was in non-compliance with Article 5115, that Sheriff Harwell and McLennan County were liable because of negligence per se or as a matter of law.

■ Negligence per se, in order to be a ground of recovery, requires jury findings of (1.) that the Defendant violated the statute, and (2.) that such violation was a proximate cause of the deceased's death. *Carter v. William Sommerville and Son, Inc.* (Tex.1979) 584 S.W.2d 274.

■ Assuming without deciding that the deceased's incarceration was in some respects in violation of the requirements of Article 5115, yet there are no jury findings to the effect that any of such violations were a proximate cause of the deceased's death. Moreover, the record does not disclose that Plaintiffs ever requested any special issues to be submitted in this regard. This being so, such findings are deemed to be in support of the judgment. Rule 279, Texas Rules of Civil Procedure.

■ Insofar as Chief Higdon and the City of Beverly Hills are concerned, as stated before, the jury found that Chief Higdon did suspect that the deceased was insane at the time of the arrest; however, the jury failed to find that such arrest was a proximate cause of the deceased's death.

For the reasons hereinabove stated, Appellants' first point of error is overruled.

Appellants' second point of error complains the trial court erred in applying immunity for the Defendants under the circumstances of this case. We do not agree.

■ The doctrine of qualified immunity is available as a defense where non-judicial government officials, such as these Defendants, are performing discretionary functions and act in good faith. *Procunier*

*v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

■ The acts of Defendants Chief Higdon and Sheriff Harwell were quasi-judicial acts done by them in the exercise of their quasi-judicial functions, and since they are officers whose duties are related to the judicial process, they are entitled to immunity. *Barr v. Matteo* (1959) 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; *Harmon v. Superior Court* (9th Cir.1964) 329 F.2d 154 at page 155.

The jury's findings likewise acquit the Defendant-Appellees of any liability, among them being: (1.) The jury failed to find that Sheriff Harwell or his agents or employees were deliberately indifferent to the deceased's medical needs; (2.) that Sheriff Harwell, his agents or employees were acting pursuant to a court order in the incarceration of the deceased; and (3.) that they were acting in good faith insofar as such incarceration was concerned. Also, the jury found that Chief Higdon acted in good faith in the arrest of the deceased. All of the above findings by the jury are consistent with and supportive of the trial court's application of the doctrine of qualified immunity. Appellants' second point is overruled.

Appellants contend under the third point of error that the trial court erred in submitting an incorrect definition of qualified immunity. Appellants have waived the opportunity to complain about the instruction submitted by the trial court because Appellants failed to object to the court's charge on the ground that the instruction was erroneous.

The trial court's instruction is worded as follows:

"You are instructed that by the term 'good faith' as used in this charge, is meant that the Defendant, Jack Harwell, or his agents or employees; or William (Bill) Higdon believed that their actions were within their lawful authority while they were acting in their official capacity."

Appellants' objection to the foregoing instruction is couched in the following language:

"We further object to the submission of the Court and its instruction of the issue of good faith. We have explained to the court what Plaintiffs' interpretation of good faith is. It's essentially a discretionary decision on the part of a police officer. And we respectfully submit the case law and the authorities have continuously said that there is no discretion to violate the Constitution, and in this case if the issues are answered and we submit they will be and they should be based upon the evidence, the Constitution is violated and therefore the matter of good faith immunity should not be introduced and it has no part in this charge."

■ A party who wishes to complain on appeal that a submitted instruction is incorrect is required to object to the instruction as submitted, and such objection must point out distinctly the matters to which one objects and the grounds of the objection. Rule 274, Texas Rules of Civil Procedure; *Texas General Indemnity Co. v. Moreno* (Houston 1st CA 1982) 638 S.W.2d 908, 914, no writ.

■ Stated another way: An objection does not meet the requirement of this rule unless the defect relied upon and the grounds of the objection are stated specifically enough to support the conclusion that the trial court was fully cognizant of the ground of the complaint and deliberately overruled it. See *Chrysler Corp. v. Roberson* (Waco CA 1981) 619 S.W.2d 451, no writ, and the cases therein cited at page 459.

■ In the light of the foregoing authorities, we hold that Appellants here have failed to point out distinctly and specifically their objection to the charge of the court, and have thereby waived their objection to such instruction.

■ In Appellants' fourth point of error, it is contended the trial court erred by failing to instruct the jury on the presumption of damages upon a finding of a violation of a substantive constitutional right and by failing to provide instruction on the provisions of the Eighth Amendment to the Federal Constitution. Appellants cite authority where it has been held that such a jury instruction is proper if a violation of a substantive constitutional right is found. In the case at bar, however, the error, if any, is harmless since the jury responded negatively to Special Issues 2 and 3 which inquired as to the alleged constitutional violations by Appellees (re: deliberate indifference to deceased's medical needs). Moreover, in response to Special Issue No. 11 as to what sum would compensate the deceased for any substantive constitutional violation, the jury answered zero dollars. Therefore, error (if any there was) on the part of the trial court in failing to give such instructions was harmless. Appellants' fourth point is overruled.

■ By the fifth point of error, Appellants assert the trial court erred in disallowing evidence as to the Appellees' state of mind as it related to their personal understanding of Article 5115's mandate. Here Appellants failed to present any error to this court for review, since Appellants do not call to the attention of the court any reference in the record to show what evidence they contend was improperly allowed or excluded.

■ When tendered evidence is excluded, whether testimony of one's own witness on direct examination or testimony of the opponent's witness on cross-examination, in order to later complain it is necessary for the complainant to make an offer of proof on a bill of exception to show what the witness' testimony would have been. Otherwise there is nothing before the appellate court to show reversible error in the trial court's ruling. See *Texas Employers Ins. Assn. v. Garza* (Corpus Christi CA 1977) 557 S.W.2d 843, NRE, and the cases therein cited at page 847.

■ It is not the obligation of the appellate court to search the statement of facts (here it consists of some 1500 pages) to

locate where the matters complained of were preserved. *Hale v. Ramsey* (Austin CA 1975) 524 S.W.2d 436, 438, no writ; *Weeks v. Heinrich* (Corpus Christi 1969) 447 S.W.2d 688, 696, NRE.

Appellants' fifth point of error is overruled.

By the sixth point of error Appellants contend the trial court erred by ruling that the reports and other resulting documents generated by official investigation by the McLennan County Sheriff's office were work product and thus privileged. On May 20, 1983, Plaintiffs filed a Motion to Compel Discovery of reports and photographs generated by the investigation of Defendants' employees at or near the scene of the death.

However, we have carefully searched the record and have been unable to find a ruling or order by the trial court upon this motion. Page 7 of the Statement of Facts shows a discussion between the trial court and counsel outside the presence of the jury concerning certain pre-trial matters, including a motion in limine concerning some photographs. The court here commented that he had previously ruled the photographs to be work product. This discussion does not seem to concern the items designated by Appellants' sixth point of error, namely, reports and other resulting documents generated by official investigation.

In short, there is nothing in the record to show a ruling by the trial court of the Plaintiffs' Motion to Compel in question. In order to raise a question in an appellate court, the general rule is that the record must not only show that the Appellants requested relief in the trial court but that the trial court made an adverse ruling thereon. A motion not acted upon by the trial court furnishes no basis for a point of error. *State v. Dikes* (San Antonio CA 1981) 625 S.W.2d 18, no writ; *Williams v. Williams* (Tyler CA 1976) 537 S.W.2d 107, no writ, and the cases cited therein at page 109.

However, be that as it may, we are of the opinion that the items requested by Plaintiffs in their Motion to Compel constituted privileged matters, as work product of the attorney, or as "communications passing between agents, representatives, or employees of any party," made subsequent to the occurrence or transaction upon which the suit is based, under the provisions of Rule 166b, Section 3, Texas Rules of Civil Procedure. Rule 166b became effective on April 1, 1984, about one month prior to the beginning of trial on the merits of the case at bar. However, prior to April 1, 1984, the provisions concerning the privileged nature of the work product of an attorney, and "communications" hereinabove outlined were contained in Rule 186a, T.R.C.P., in substantially the same form as now contained in Rule 166b, Sec. 3. Appellants' Sixth Point of Error is overruled.

Appellants' remaining points of error are as follows: (7.) the trial court erred in overruling Appellants' Application for Change of Venue; (8.) error committed by Defendants' counsel in closing argument; (9.) the trial court erred in granting to the Defendants McLennan County and City of Beverly Hills a partial summary judgment; and (10.) cumulative error amounting to reversible error.

We have carefully considered Appellants' four remaining points and overrule them for want of merit.

Judgment of the trial court is affirmed. AFFIRMED.

THOMAS, J., not participating.