

NUMBER
13-11-00524-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**INTERNATIONAL BANK OF COMMERCE,**                    **Appellant,**

**v.**

**MONICA M. RIOS,**                    **Appellee.**

---

### On appeal from 444th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Vela
### Memorandum Opinion by Justice Garza

This appeal arises from a wrongful foreclosure suit brought by appellee, Monica Rios. A jury found that appellant, International Bank of Commerce ("IBC"), failed to send notice of default and notice of foreclosure to Rios's "last known address" as required by law. *See* TEX. PROP. CODE ANN. § 51.002 (West Supp. 2011). IBC was

ordered to pay Rios $120,000 in damages.  By four issues on appeal, IBC contends that:  (1) the evidence was legally insufficient to support the judgment; (2) the evidence was factually insufficient to support the judgment; (3) the jury's answer to question number four of the jury charge, relating to damages, was immaterial and should have been disregarded; and (4) the jury charge was erroneous.  We affirm.

## I. BACKGROUND

In 1997, Monica Rios and her husband Eduardo purchased a house located at 335 Pinar del Rio in Brownsville, Texas.  The sales price was $145,000, with a $15,000 down payment being made by the Rioses and $130,000 financed by IBC.  To secure the financing, the Rioses executed a Deed of Trust and a promissory note payable to IBC.  The promissory note stated in relevant part:

> Unless applicable law requires a different method, any notice that must be given to me [Rios] under this Note will be given by delivering it or by mailing it first class to me at the Property Address above or at a different address if I give the Note Holder [IBC] a notice of my different address.

> Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

The Deed of Trust contained a similar provision:

> Any notice to Borrower [Rios] provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender [IBC].  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

> At the time of closing on the property, the Rioses filled out a form designating

2

their mailing address for purposes of correspondence from IBC. The form stated in its entirety as follows:

> PLEASE USE THE FOLLOWING ADDRESS FOR FUTURE CORRESPONDENCE MAILED BY INTERNATIONAL BANK OF COMMERCE UNTIL FURTHER NOTICE:
>
> P.O. Box 3385
> Brownsville
> Texas  78523-3385

The form, signed by both Monica and Eduardo, was admitted into evidence at trial as Plaintiffs' Exhibit 11.

Seven years after closing on the purchase of the property, the Rioses filed for Chapter 13 bankruptcy protection. *See* 11 U.S.C. § 1301–1330. In their bankruptcy petition, the Rioses listed their mailing address as 335 Pinar del Rio, Brownsville, Texas. IBC was included in a list of creditors attached to the petition, and IBC received a copy of the petition. However, IBC never appeared in the bankruptcy case and never filed a notice of claim. Instead, the Rioses apparently elected to repay IBC outside of the bankruptcy plan.

The Rioses often fell behind on their mortgage payments, both before and during the bankruptcy proceedings. Prior to the bankruptcy filing, when a payment was missed, IBC sent a notice of delinquency to the Rioses' designated mailing address, P.O. Box 3385 in Brownsville. However, after the bankruptcy case began, IBC began sending notices instead to the Rioses' bankruptcy attorney, ostensibly in an effort to comply with federal law prohibiting creditors from making direct contact with bankruptcy debtors. *See* 11 U.S.C. § 362(a)(6) (stating that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover

3

a claim against the debtor that arose before the commencement" of the bankruptcy case).

In 2007 or 2008, Eduardo failed to pay the fee for the P.O. Box and lost access to it. He did not leave a forwarding address with the post office, nor did he give IBC formal notice in writing of a change in his address.

In June 2008, Monica filed for divorce. At that time, according to Monica, she contacted "Cesar," an employee at IBC's branch in McAllen, Texas, about obtaining a statement showing the outstanding balance on the mortgage. Monica testified that she told "Cesar" that she wanted the statement and all future documents sent to 335 Pinar del Rio. Monica also stated that, at one point, she sent a fax to "Cesar" which included her new mailing address.

In April 2009, the bankruptcy case concluded and the Rioses' debts were discharged.[1] On July 14, 2009, IBC sent separate notices to Monica and Eduardo demanding payment on the note, which had reached maturity, and informing them that, if the amounts owed were not paid, the property would be foreclosed upon and sold at auction on August 4, 2009. IBC sent one notice by certified mail, return receipt requested, and one notice by first-class mail, to each of Monica and Eduardo. All four notices were addressed to P.O. Box 3385 in Brownsville. The certified mail notices were returned to IBC unclaimed; the notices sent by first-class mail were not returned.

The outstanding mortgage balance was not paid, and so the foreclosure auction went forward as scheduled on August 4, 2009. The auction was won by Eric Williams

---

[1] Eduardo testified that, soon after receiving a discharge of his debts in the bankruptcy proceeding, he received a call from an IBC representative stating that he needed new insurance on the property. According to Eduardo, the IBC representative did not mention that the Rioses' mortgage was in arrears or that foreclosure was imminent.

4

and Christina Building Project Partnership, L.L.C. ("Christina"). Williams and Christina paid $59,500 for the property, and the excess proceeds from the sale, amounting to $13,597.06, were returned to Monica. That evening, the Rioses were informed of the sale and were told to vacate the premises within ten days.

Monica then filed suit against IBC, Williams, Christina, and Eduardo, asserting wrongful foreclosure and negligence per se.[2] After a trial, a jury found that: (1) IBC did not breach the notice provisions contained in the note and deed of trust; (2) IBC did not provide notice of default and notice of foreclosure to Monica at her "last known address," as required by statute; (3) IBC committed negligence per se; and (4) Monica's damages, as measured by her lost equity in the property, amounted to $102,000.[3] Following IBC's motion for judgment notwithstanding the verdict and motion to disregard certain of the jury's answers, the trial court disregarded the jury's finding as to negligence per se and instead rendered judgment against IBC on the wrongful foreclosure claim. The final judgment ordered that IBC pay Monica $102,000 in damages, plus pre-judgment interest of $8,593.15 as well as 5% post-judgment interest from May 5, 2011 until paid.[4] This appeal followed.

## II. DISCUSSION

### A. Evidentiary Sufficiency

---

[2] Neither Williams, Christina, nor Eduardo are parties to this appeal.

[3] At trial, an appraiser valued the home at the time of foreclosure at $184,000.

[4] The final judgment also awarded damages as well as title of the property at issue to Williams and Christina.

By its first two issues on appeal, IBC argues that the evidence was legally and factually insufficient to support the jury's finding that IBC failed to send notices of default and of foreclosure to Monica's "last known address."

### 1. Standard of Review

In evaluating the legal sufficiency of the evidence supporting a verdict, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We will sustain a legal sufficiency challenge only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. In reviewing factual sufficiency, we consider all the evidence in a neutral light and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### 2. Applicable Law

The Texas Property Code requires that certain notices be sent to a debtor prior to a foreclosure sale. *See* TEX. PROP. CODE ANN. § 51.002. Specifically, at least 21 days before the date of the sale, written notice of the sale must be served "by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." *Id.* § 51.002(b)(3). Moreover,

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed

6

of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).

*Id.* § 51.002(d).

Service of notice by certified mail under section 51.002 "is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." *Id.* § 51.002(e). For a debt secured by the debtor's residence, as here, the term "debtor's last known address" is defined as "the debtor's residence address unless the debtor provided the mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002." *Id.* § 51.0001(2)(A) (West Supp. 2011). A debtor must inform the mortgage servicer "in a reasonable manner of any change of address of the debtor for purposes of providing notice to the debtor under Section 51.002." *Id.* § 51.0021 (West 2007).

In a 2008 memorandum opinion, we noted that the "reasonable manner" requirement in section 51.0021 and the "written change of address" requirement in section 51.0001(2)(A) do not conflict; rather, both are applicable. *King v. Bank of N.Y.*, No. 13-07-00069-CV, 2008 Tex. App. LEXIS 5274, at *18–20 (Tex. App.—Corpus Christi July 17, 2008, no pet.) (mem. op.) (construing TEX. PROP. CODE ANN. §§ 51.0001(2)(A), 51.0021). That is, the statute requires a debtor's notice of address change to be *both* "written" *and* made "in a reasonable manner." *See id.* at *19 ("Notice that was reasonably submitted but unwritten, as well as notice that was written but unreasonably submitted, would fail statutory requirements.").

### 3. Analysis

7

It is undisputed that IBC sent the required notices to P.O. Box 3385. The only issue, therefore, is whether P.O. Box 3385 was Monica's "last known address," under the statutory definition, at the time the notices were sent.

When the Rioses purchased the property at issue in 1997, 335 Pinar del Rio became the Rioses's residence address and, as provided by statute, their default mailing address for notices required under section 51.002. *See* TEX. PROP. CODE ANN. § 51.0001(2)(A)*.* However, the Rioses decided not to use their residence address as their mailing address for purposes of IBC's correspondence. Instead, they filled out their original change of address form directing IBC to send all correspondence instead to P.O. Box 3385. This form constituted a "written change of address" and was provided to IBC prior to the mailing of any notices under section 51.002. *See id.* Therefore, the form served to effectively change Monica's "last known address" from her residence, as provided by default under the statute, to P.O. Box 3385. *See id.* According to IBC, at the time it sent the default and foreclosure sale notices, the Rioses' "last known address" remained the P.O. box. On the other hand, Monica contends that she effectuated an additional change of address between 1997 and 2009 indicating that her proper mailing address was 335 Pinar del Rio. IBC asserts that this additional change of address was not supported by the evidence. Specifically, IBC contends that "[t]here is no probative evidence demonstrating that Monica submitted a written change of address to IBC in a reasonable manner."

IBC emphasizes that both Monica and Eduardo testified that they did not provide explicit written notice to IBC of a change in their mailing address to 335 Pinar del Rio:

> Q. [IBC's counsel]   Now, this form, did you ever provide—you, Mr. Rios, did you ever provide—it's Exhibit 11 in your book.

8

A. [Eduardo]     Okay.  Again.

Q.               Did you ever provide IBC with notice of a different address to mail your demands to?

A.               No, but I recall—

Q.               That's—it's a yes or no question.

A.               No.

Q.               I'm sorry.  Your counsel can have you elaborate.  I just want to clarify that you're not telling this jury that you gave IBC written notice to change what's on Exhibit 11 at any time?

A.               No.

Q.               Okay.

A.               Not to my knowledge.

                 . . . .

Q. [IBC's counsel]  Now, did you ever give IBC any written notice directing them to change your directive of where payments would be made [sic]?

A. [Monica]      Verbal, but not written[.]

                 . . . .

Q.               And did you—other than the verbal conversation you said you had with this person named Cesar, you never told anybody else in writing at IBC [of your change of address]?

A.               Not in writing, other than the paperwork I filled out for Mr. Rodriguez [her bankruptcy attorney].

Monica does not dispute that she denied, at trial, having provided IBC with written notice of her change of address.  She nevertheless asserts that the evidence supported the jury's implicit finding that she provided the requisite notice.  In support of

9

this assertion, Monica points to two writings that were allegedly provided to IBC: (1) the 2004 bankruptcy petition, which was served on IBC and which listed 335 Pinar del Rio as the Rioses' mailing address, and (2) the fax Monica allegedly sent in 2008 to IBC representative "Cesar." We must therefore determine whether the evidence supported a finding that either the bankruptcy petition or the fax constituted a writing informing IBC "in a reasonable manner" of Monica's change of address. *See id.* § 51.0021. The parties have not directed us to, nor have we located, any case law discussing what manner of notice is "reasonable" in the context of section 51.0021. "Reasonable" is generally defined as "[f]air, proper, or moderate under the circumstances." BLACK'S LAW DICTIONARY 1379 (9th ed.).

With respect to the fax, Monica testified on cross-examination as follows:

Q. [IBC's counsel]  Did you ever give IBC notice, "IBC, please change my mailing address to the home address"?

A. [Monica]  Yes, I did.

Q.  In writing did you ever do that, other than the bankruptcy petition, Ms. Rios?

A.  Just my fax to Cesar. That's the only one.

Q.  Your fax now?

A.  I called him and I sent a fax from my work so he could fax me the documents.

Q.  This is the first I've heard of a fax.

A.  I mentioned it already.

Q.  Did your counsel produce that to me in discovery?

A.  No, I mentioned something about it.

Q.  I'm entitled to all documents.

10

A.          I didn't submit a copy of it to her. I couldn't find it. But I did call him and I received a fax and some documents to my house.

Q.          You received a fax to your house?

A.          No, ma'am. I sent a fax from my work. I received the documents at my house.

Q.          Okay. But you don't have a copy of any of that for evidence for this jury, do you?

A.          No, just my word.

IBC argues that the record does not support Monica's assertion on appeal that her testimony was that the fax informed IBC of the Pinar del Rio address. IBC notes correctly that: (1) Monica did not testify as to the precise content of the fax; (2) she did not, in fact, mention the fax in her prior testimony, as she claimed on cross-examination; (3) the fax was not produced in discovery nor introduced into evidence at trial; and (4) Monica previously testified that she gave only "[v]erbal, but not written" notice of her address change to IBC. However, as set forth above, Monica did agree with IBC's counsel when asked whether, aside from the bankruptcy petition, she ever gave IBC written notice of her new address; and she stated that "my fax to Cesar" was the only other time that she provided such notice. The jury was entitled to believe that testimony and to disbelieve Monica's earlier testimony that she had not provided written notice to IBC of her address change. *See City of Keller*, 168 S.W.3d at 819 n.90 (noting that it is "up to jurors 'to resolve conflicts and inconsistencies in the testimony of any one witness . . .'") (quoting *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561, 563 (Tex. 1952)); *see also Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) ("[W]hen a witness recants prior testimony, it is

11

up to the fact finder to determine whether to believe the original statement or the recantation.").

IBC argues that no reasonable juror could have concluded that Monica's fax to "Cesar" gave reasonable notice of her address change because "[e]ven if the jury inferred that the fax contained Monica's residence address, it could not infer that it also contained instructions to change her notice address without simply guessing." *See City of Keller*, 168 S.W.3d at 813 (noting that evidence is no more than a scintilla and is legally insufficient "if jurors would have to guess whether a vital fact exists"). However, the statute does not explicitly require that a notice of address change contain "instructions" as contemplated by IBC; instead, the statute only requires that "a written change of address" be provided "in a reasonable manner" to the mortgage servicer. See TEX. PROP. CODE ANN. §§ 51.0001(2)(A), 51.0021. In any event, we disagree that the jury was required to make any impermissible inferences here. The evidence, viewed in the light most favorable to the verdict, *see City of Keller*, 168 S.W.3d at 822, established that Monica sent a fax to Cesar asking IBC to "please change my mailing address to the home address." The jury therefore did not need to "guess" whether the fax contained the address or whether it asked IBC to change the address, because Monica testified to those things. Moreover, it was undisputed that IBC received the bankruptcy petition, which clearly stated that 335 Pinar del Rio was Monica's mailing address, and that IBC was aware of the home address at the time it sent the notices at issue. In light of these facts—and indulging every reasonable inference that would support the verdict, *see id.*—we find that the jury could have reasonably concluded that Monica's fax constituted reasonable written notice to IBC of her address change. *See*

12

TEX. PROP. CODE ANN. §§ 51.0001(2)(A), 51.0021; *City of Keller*, 168 S.W.3d at 822. We also find, viewing the evidence in a neutral light, that such a finding would not be so contrary to the weight of the evidence as to be clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176.[5] IBC's first issue is overruled.

## B.    Damages Question

By its third issue, IBC argues that the jury's answer to question number four of the jury charge, regarding damages, is immaterial and should have been disregarded by the trial court. *See Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999) (noting that jury answers may be disregarded if they have no support in the evidence or are immaterial); *see also* TEX. R. CIV. P. 301. A question is immaterial when it should not have been submitted, when it calls for a finding beyond the province of the jury, such as a question of law, or when it was properly submitted but has been rendered immaterial by other findings. *Se. Pipe Line Co.*, 997 S.W.2d at 172 (citing *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)).

The jury charge in this case contained seven questions in total, five of which concerned Rios's claims against IBC. Question one asked if IBC failed to comply with the notice provisions in the Deed of Trust and promissory note; question two asked if IBC provided notice of default and notice of foreclosure to Monica at her last known address; question three asked if IBC's negligence, if any, proximately caused harm to Monica; question four asked what sum of money would fairly and reasonably compensate Monica for her damages; and question seven asked the jury to determine Monica's reasonable attorney's fees in the case. The jury answered "No" to questions

---

[5] In light of this conclusion, we need not address whether the bankruptcy petition alone also served as reasonable notice to IBC of Monica's address change. *See* TEX. R. APP. P. 47.1.

13

one and two; it answered "Yes" to question three; it answered "$102,000" to question four; and it did not answer question seven.

It is undisputed that the predicate instruction, or "hook," preceding question number four contained an error. That instruction stated: "If you answered 'Yes' to Question 1, 2 or 3 is 'Yes' [sic] then answer the following question. Otherwise, do not answer the following question." The problem with this instruction is that a "Yes" answer to question number two did not indicate, as the instruction implied, a verdict in favor of Monica. Rather, a "No" answer to that question—the answer the jury actually gave— was indicative of such a verdict. The jury therefore should have been instructed to answer the damages question if it answered "Yes" to questions one or three *or* if it answered "No" to question two.[6]

IBC argues that, since the trial court disregarded the jury's answer to question number three,[7] it should also have disregarded the answer to question four, because

---

[6] The instruction preceding question seven, regarding attorney's fees, contained a similar error. That instruction stated: "Answer the following question only if you answered 'Yes' to Question 1 or 2. Otherwise, do not answer Question 7." The jury, in accordance with the erroneous instruction, did not answer question seven. Neither party discusses question seven on appeal.

[7] The final judgment explained why the jury's answer to question number three was disregarded:

The Court finds that the verdict as returned by the Jury must be reformed and thus enters this Judgment that modifies the original verdict returned by the Jury. In so doing, the Court finds that no legal precedent exists for the assertion of a negligence per se claim based upon a violation of Section 51.002 of the Texas Property Code and accordingly, the question based upon negligence per se was not properly submitted to the Jury and is not included in this Final Judgment.

The final judgment then went on to discuss an issue analogous to the one raised by IBC here:

However, as to any conflict or inconsistency that might exist between the Jury's responses to Question 1 and Question 2, the Court also finds that the Jury's finding of liability as to negligence per se makes it apparent that the Jury did intend to find liability on the part of Defendant [IBC]. Thus, the verdict as to Question 1 and Question 2 shall not be modified and the Court finds that the Jury's response to Question 2 is sufficient to find liability on the part of Defendant [IBC], and that such finding is supported by evidence admitted at trial.

14

the only reason the jury answered that question was because it previously answered "Yes" to question three.

We disagree that the trial court erred in failing to disregard the jury's answer to question number four. We first note that, although the "hook" preceding question four was erroneous, the jury properly answered the question in accordance with the instruction, because it had previously answered "Yes" to question three. We next observe that the actual question posed to the jury did not limit the jury's consideration of damages to only those attributable to the question or questions to which it answered "Yes"; instead, the question asked the jury to assess the amount of damages "that resulted from such conduct." The charge does not explicitly state what "such conduct" refers to, but we find it reasonable to assume that "such conduct" refers to all of the alleged tortious conduct asked about in questions one, two and three. Finally, the question specifically instructed the jury to consider only "[t]he equity in the property" when determining damages. IBC does not dispute that "[t]he equity in the property" was the correct measure of damages under any of the liability theories asserted by Monica.[8]

The record therefore shows the following: the jury properly followed the erroneous "hook" instruction by answering the question; the jury would have answered the question even if the "hook" did not contain the identified error; the measure of damages was not limited to questions to which the jury gave an affirmative answer; and the answer to the damages question would have been the same regardless of which liability theory was relied upon. In light of these facts, we conclude that the erroneous

_____

[8] IBC does argue that Monica should have been awarded only one half of the equity in the property because her divorce was still pending at the time of trial. We fully address this issue *infra* section II.C.

"hook" instruction, combined with the trial court's disregarding of the jury's answer to question three, did not compel the trial court to also disregard the jury's answer to the damages question. IBC's third issue is overruled.

**C.    Charge Error**

By its fourth and final issue, IBC contends that the trial court erred by overruling its verbal objection to the measure of damages stated in jury charge question number four. We review charge error for abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).

As noted, the jury was instructed in question four that the only element of damages that should be considered, if any, is "[t]he equity in the property." At the charge conference, IBC objected to this instruction and requested that the jury instead be instructed that the appropriate measure of damages is "one-half interest in the equity of the property." IBC argues that its objection should have been sustained, and its proposed instruction adopted, because the evidence adduced at trial showed conclusively that Monica only owned one-half of the equity in the property at the time of trial.

The following colloquy occurred after Monica was re-called to the stand by IBC's counsel as an adverse witness:

> Q. [IBC's counsel]    Good afternoon, Ms. Rios. We're almost done, I think. I just have a couple of questions in connection with this lawsuit and the—you brought this lawsuit on your own behalf; is that correct?
>
> A. [Monica]          That's correct.
>
> Q.                   And one of the Defendants, as has been established earlier, was your husband?

16

A.           Initially, yes.

Q.           You didn't bring this lawsuit on behalf of your husband, did you?

A.           No, ma'am.

Q.           And can you tell me do you own—you're in a divorce proceeding?

A.           Yes, ma'am, we should be finalized next month.

Q.           I'm sorry?

A.           We should be finalized next month.

Q.           But right now you only own half an interest in the house; is that correct?

[Monica's counsel]:  Objection, Your Honor. She's asking this witness for a legal conclusion. She's not qualified to testify to that.

THE COURT:  As to her interest in the house?

[Monica's counsel]:  That's correct. It's currently community property. Her interest is absolute [sic] 100 percent.

THE COURT:  Well—

[IBC's counsel]:  Your Honor, that's not the law.

THE COURT:  I'll let her give her response to the questions. And if you need to clarify it to any extent, but she's certainly not entitled to give legal opinions. That's what this Court does.

[IBC's counsel]:  No, I'm not asking for that. I'm asking—

THE COURT:  What her understanding is?

[IBC's counsel]:  Yes.

THE COURT:  Okay.

Q. [IBC's counsel]    Let me ask it this way. When you and your—you acquired the property, you received a deed; is that correct, to the property?

A. [Monica]    Yes.

Q.    And the deed was made jointly to you and your husband?

A.    That's correct.

Q.    And that deed—did you ever transfer your interest out to anyone?

A.    Not to anyone other than my spouse made a—

Q.    In this house, in the residence that we're talking about.

A.    In this house, in this residence, during the divorce proceedings he made a stipulation that the house would remain for me and the children.

Q.    But that was in your temporary orders, you would just retain custody of it, possession of the house; isn't that correct?

A.    That would be upon finalization as well.

Q.    But right now, Mrs. Rios?

A.    As far as currently, yes.

Q.    We have to work right now with where we are. Right now you and your husband own the house that's at issue here jointly?

A.    Correct.

Q.    And is it your understanding that means that you have a half interest in that house?

A.    Sure.[9]

_____

[9] On cross-examination, when Monica's counsel asked her whether she had an understanding of community property law, Monica replied, "Not very much of it, no sir." Counsel then asked whether she knew, "at the end of the day whether you will have 50 percent interest in the home, 60 percent interest in

18

Q. All right. And your husband has a half interest?

A. Sure.

Q. And to your knowledge, he hasn't transferred his half interest to anyone?

A. No, ma'am, not to my knowledge.

IBC contends that, because Monica and Eduardo's divorce was pending at the time of trial and at the time of final judgment in this case, the trial court committed reversible error in denying IBC's objection to the jury instruction at issue. IBC notes that Monica is the only plaintiff in the underlying matter; Eduardo, co-owner of the property at issue, is not only not a plaintiff, but was he named as a defendant in Monica's suit.

In response, Monica does not argue that the instruction was proper on the merits; rather, she contends that IBC failed to preserve the issue for appeal because it (1) did not submit a substantially correct instruction in writing, and (2) made no post-verdict or post-judgment motion requesting that the judgment be reduced.

As Monica notes, Texas Rule of Civil Procedure 278 provides that "[f]ailure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278. It is undisputed that IBC tendered no written version of its requested instruction. However, Rule 278 does not apply here because IBC is not arguing that the trial court entirely "[f]ail[ed] to submit" the requested instruction; instead, IBC alleges that a *defective version* of the requested instruction was submitted. Under these

the home or 100 percent interest in the home?" Monica replied, "I wouldn't know. I would say my interest is 100 percent, but I don't know what that would mean."

19

circumstances, the submission of a written proposed instruction is not required, and Rule 274 is applicable instead. *See Spencer*, 876 S.W.2d at 157 ("An objection is sufficient to preserve error in a defective instruction. A request of substantially correct language is not required."); *Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 614 (Tex. 1992) ("[A] request for submission is the method of preserving the right to complain of omission of, or failure to submit an issue which is relied on by the complaining party. Objection, however, is the proper method of preserving complaint as to (1) an issue actually submitted, but claimed to be defective; or (2) failure to submit, where the ground of recovery or defense is relied on by the opposing party."); *Angelina Cas. Co. v. Holt*, 362 S.W.2d 99, 101 (Tex. 1962) ("The law is that where the court gives a definition which is defective, an objection by the opposite party is sufficient to preserve his rights, and it is not necessary for him to tender a correct definition."); *Johnson v. Johnson*, 869 S.W.2d 490, 492 (Tex. App.—Eastland 1993, writ denied) ("The proper method of preserving error as to a question, definition, or instruction actually submitted is by objection, regardless of whether the issue is relied upon by the complaining party."); *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 809 S.W.2d 514, 521 (Tex. App.—San Antonio 1991) (noting, in the case of a defective instruction, that "the defect may properly be called to the court's attention by an objection without requesting a substantially correct instruction in writing"), *rev'd in part on other grounds*, 844 S.W.2d 198 (Tex. 1992); *Tex. Gen. Indem. Co. v. Moreno*, 638 S.W.2d 908, 914 (Tex. App.—Houston [1st Dist.] 1982, no writ) ("Only if an instruction is omitted is a request a prerequisite to preserving the complaint."); *Lyles v. Tex. Employers' Ins. Ass'n*, 405 S.W.2d 725, 727 (Tex. Civ. App.—Waco 1966, writ ref'd

n.r.e.) ("If the definition is given, but is claimed to be defective, under Rule 274 objection is the means of preserving the complaint."); *see also Gerdes v. Kennamer*, 155 S.W.3d 523, 534 (Tex. App.—Corpus Christi 2004, pet. denied) ("If the charge contains an affirmative misstatement of the law, an objection suffices to preserve error."). Rule 274 states that "[a] party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection" and "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. Here, IBC made a verbal objection at the charge conference and specifically requested that the jury be instructed that the proper measure of damages is half of the equity in the property. Neither a written proposed instruction nor a post-verdict or post-judgment motion to modify the verdict was required. We therefore conclude that IBC's issue has been preserved for our review. *See id.*; *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) ("There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle.").

However, we do not agree with IBC that the trial court abused its discretion in overruling its objection to the challenged instruction. IBC is correct that the evidence conclusively establishes that the property at issue was community property of Monica and Eduardo at the time of the verdict and final judgment in this case. However, IBC directs us to no authority, and we find none, establishing that a spouse who sues on her

own behalf for wrongful foreclosure on marital property may not recover the entire amount of damages owed to the community. *See* TEX. R. APP. P. 38.1(i). In fact, we believe that the contrary proposition is better supported by case law and principles underlying community property. *See Graham v. Franco*, 488 S.W.2d 390, 396 (Tex. 1972) (holding that a claim for medical expenses incurred and lost wages was community property "and both spouses have a claim against the wrongdoer"); *id.* at 392–93 ("The principle which lies at the foundation of the whole system of community property is that whatever is acquired by the joint efforts of the husband and wife shall be their common property."); *see also* TEX. FAM. CODE ANN. § 3.202(d) (West Supp. 2011). ("All community property is subject to tortious liability of either spouse incurred during marriage."); *Chu v. Hong*, 249 S.W.3d 441, 445 (Tex. 2008) ("[I]f a third party steals community property, surely either spouse or both can seek recovery in tort for it.").[10]

We deny IBC's fourth issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
12th day of April, 2012.

---

[10] Despite the fact that Eduardo was originally named as a defendant in Monica's suit, Monica's judgment against IBC became community property because it was acquired by one of the spouses during the pendency of the marriage. *See* TEX. FAM. CODE ANN. § 3.002 (West 2006) ("Community property consists of the property, other than separate property, acquired by either spouse during marriage."). Monica does not advise this Court whether her divorce has been finalized and, if so, whether and how the IBC judgment was allocated in the division of property. Nevertheless, we note that, if a divorce decree fails to divide a community asset, the undivided property is still subject to a "just and right" division in a post-divorce partition suit under chapter 9 of the Texas Family Code. *See id.* §§ 9.201–.205 (West Supp. 2011).

22